## Shelton v. Hensley.

(Decided November 18, 1927.)

## Appeal from Pike Circuit Court.

1. Depositions.—In view of Civil Code of Practice, section 625, where depositions were taken without serving notice on defendant, who resided within state, and were taken at place other than specified in notice served on defendant's attorney, and there was no showing that an adjournment was had, or notices posted, under Civil Code of Practice, section 569, and where cause of adjournment was not stated, as required by Civil Code of Practice, section 570, overruling exceptions to depositions held error.

2. Depositions.—Defendants, who filed paper, after being served with writ of habeas corpus, traversing petition asking for custody of child, held entitled to take depositions, under Civil Code of Practice, section 557, although paper was styled "Response to Writ," since the name given to the pleading is not controlling.

3. Pleading.—The name given to a pleading is not controlling, but its character is to be determined by its allegations, with certain exceptions, under Civil Code of Practice, section 97, subsection 4.

4. Guardian and Ward.—Although, under Ky. Stats., section 2032, the statutory guardian has superior right to possession, care, and management of ward's estate, the right of the guardian to the custody of the ward is subject to state's power to award the custody of the child to others.

5. Parent and Child.—In determining custody of minor child, the paramount concern is to award the custody of the child, so as to best promote its welfare and happiness.

6. Parent and Child.—In contest for custody of orphan, evidence held to show that it was better for the child's welfare to be given into custody of stepmother than custody of maternal grandfather, although the grandfather was the statutory guardian.

L. J. MAY for appellant.

PICKLESIMER & STEELE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

The appellee, Henry Hensley, whom we shall call the plaintiff, instituted this action to obtain the custody of a little girl, Lillian Virginia Shelton, now about 8 years of age. He was successful, and the defendant, Nellie Shelton, has appealed. Lawrence Shelton's first wife was Miss Geneva Hensley, a daughter of the plaintiff. Lillian Virginia Shelton is a daughter of

that marriage. After the death of Mrs. Geneva Hensley Shelton, Lawrence Shelton married the defendant, and a daughter, whose name does not appear in this record, has been born to them.

Lawrence Shelton was a coal miner, and in 1925 a piece of slate fell on him, and as a result of the injuries then sustained he died in the early part of August of that year, and on the 4th of August, before the burial of Lawrence Shelton, the plaintiff, on his own motion, was appointed guardian of Lillian Virginia Shelton. Shortly after that appointment, he began an action in the Pike county court to secure custody of this child, but was unsuccessful, and on October 3, 1925, he instituted this action in equity in the circuit court, and in this equity suit secured a writ of habeas corpus, which was served on the defendant, Nellie Shelton, on October 7th. Nellie Shelton filed a paper, styled "Response to Writ," on October 10, in which she traversed the petition, and pleaded that she had been adjudged the care and custody of the child by the Pike county court. Nothing further was done until July, 1926, when the plaintiff took a number of depositions, to which exceptions were filed by the defendant. Those exceptions were overruled, and then the defendant took a number of depositions. Plaintiff's counsel, in their brief, proceed as though exceptions had been filed to these depositions; but we find no such exceptions in the record. The cause was then submitted, and the court awarded the custody of the child to the plaintiff.

The defendant superseded the judgment, and has appealed, and insists the court erred in overruling her exceptions to the plaintiff's depositions. These depositions were taken upon notice served on L. J. May, the attorney for the defendant. By section 625, Civil Code, notice to take depositions may be served by delivering a copy to a party's attorney, provided the party cannot be found and has no known place of abode in this state; but from the affidavit filed by plaintiff's attorney in this case it appears that Nellie Shelton lives in this state, and that her residence is on Pond creek, in Pike county. That being true, then this notice should have been served by delivering a copy to her, and, if she could not be found at her usual place of abode, by leaving a copy there with a person over 16 years of age, residing in the same family with her, or, if no such person be there, by affixing a

copy to the front door of her place of abode, which was not done. Moreover, the notice given was that these depositions would be taken on July 2, 1926, at the residence of Henry Hensley, on Pond creek, near Ep post office; but the certificate of the notary shows that these depositions were taken on that day at the law office of Pickelsimer & Steele, which is in the city of Pikeville, and there is nothing to show that an adjournment was had, or notices posted under section 569 of the Civil Code, nor does the officer state the cause of adjournment, as required by section 570. Therefore the exceptions to these depositions should have been sustained.

Counsel for the plaintiff cite section 557 of the Civil Code and contend that the defendant was not entitled to be heard at all, or to take depositions when she did, because she had not filed an answer. As we have stated, the defendant had filed a paper, styled "Response to Writ," and that this paper traversed the petition; so it can make no difference what she styled the paper, as her rights are determined, not by what she said she was doing, but by what she actually did. As said in the case of Prewitt v. Clayton, 21 Ky. (5 T. B. Mon.) 4:

"It was unnecessary, after stating the facts which constitute a trespass quare clausum fregit, to call the trespass by its name. A bear well painted and drawn to the life is yet the picture of a bear, although the painter may omit to write over it, 'This is the bear.' "

The name given to a pleading is not controlling, but its character is always to be determined by its allegations. 31 Cyc. 46. See Baxter Realty Co. v. Martin, 185 Ky. 697, 216 S. W. 110. As a general rule, this is true, but there are certain exceptions. See subsection 4 of section 97 of the Civil Code. This paper, filed by the defendant, does not come under any of those exceptions, and was good as an answer, although she did not so style it.

Before proceeding to a discussion of the evidence, we think it well to note that, while this is an action between the plaintiff, Hensley, and the defendant, Mrs. Shelton, there appear in the offing other parties, who are really about as much interested as these, though not parties to the suit. These parties are Mr. and Mrs. C. B. Cleghon and Mr. and Mrs. Robert Shelton. Mrs. Cleghon

is the daughter of the plaintiff, Hensley, and the plaintiff is a widower. We gather from the evidence that their plans are that Mr. and Mrs. Cleghon are to move into the house with the plaintiff and help him in taking care of the child; thus, according to their plans, this child would live in this household with its aunt, Mrs. Cleghon, and her uncle by marriage, C. B. Cleghon, her maternal grandfather, the plaintiff, Hensley, and his daughter, Maud Hensley, a young woman of about 18 years of age. There is nothing in the record to show the ages of the others, nor do we know how many children Mrs. Cleghon has, or their ages.

The interest of Mr. and Mrs. Shelton is this: They are the paternal grandparents of this child, and have by some sort of procedure adopted her. Lawrence Shelton was their son, and we gather from the evidence that the plans of the defendant are that she and the child, Lillian Virginia Shelton, together with their own daughter, shall live in the home of Mr. and Mrs. Robert Shelton. We know the defendant is 22 years of age, but from the evidence there is nothing to show the ages of Mr. and Mrs. Shelton, or the ages of their children, or how many of them live in this home. From the evidence, we gather enough to satisfy us that it is, so far as comfort and convenience are concerned, about on a par with the home that would be given the child by Mr. Hensley. The child would have a number of aunts and uncles in this home, and as far as we can learn from the evidence the religious influences and cultural advantages of the two homes are about equal. There does not seem to be any great difference between the educational advantages that would be afforded the child in the two homes. In each instance the child would have an opportunity to attend a good school, where she could get, not only a common, but a high school education. The distance of the schools from the home is about the same in each instance, except that, if the child lives with Mr. Hensley, it would have to walk to school and would have to cross a railroad track, while in the home of Mr. Shelton the child would be taken to school in a school bus, that passes the home each morning, and would be brought home by the same means in the afternoon.

The one difference between the child's situation in the two homes, and the one which has influenced us in our disposition of the child, is that, if the child is left with

the defendant, she will know her half-sister as a sister, whereas, if the child is left with Mr. Hensley, she will, on account of the bad feeling between the plaintiff and the defendant, never know her half-sister, nor would she, as a result of the feeling that has been engendered by this litigation, ever know her paternal grandfather and grandmother. This unfortunate child has been deprived of her father and mother. The only near and dear blood relation she can ever have is this half-sister, and we are persuaded that the two should not be separated, if it is possible for them to be together. It is unfortunate that this condition has arisen, but we must deal with the situation as it is, and not as it ought to be, and we feel that it is for the best interest of this child to leave it with the defendant. There is no suggestion in the evidence that both of these families are not composed of good people. The plaintiff's hasty action in taking steps to secure the custody of this child before its father was buried is, we are sure, the cause of much of this bad feeling, and possibly, with the passage of time, a better feeling may come between the two families, and between the plaintiff and the defendant, so that the child may yet be taught to know, love, and respect the plaintiff and his family, and be allowed to visit them.

By section 2032 of our Statutes, the statutory guardian has the superior right to the possession, care, and management of his ward's estate; but the right of a guardian, or even of a parent, to the custody of the ward or child, is not absolute. The state, in its capacity of parens patriæ, may assume direction, control, and custody of the child, and delegate such authority to whom it may see fit. See 31 C. J. 990. The welfare of the infant is the thing by which the courts shall be guided, and our paramount concern is to so bestow the custody of the child as to best promote its welfare and happiness. See Bedford v. Hamilton, 153 Ky. 429, 155 S. W. 1128; Shallcross v. Shallcross, 135 Ky. 418, 122 S. W. 223; Riggins v. Riggins, 216 Ky. 281, 287 S. W. 715; Rallihan et al. v. Motschmann, 179 Ky. 180, 200 S. W. 358.

It is urged, as the defendant is only the stepmother of this child, that she is not the proper person to have the custody of it. We are by no means partial to stepmothers, as will be seen from the case of Guffy v. Gilliam, 213 Ky. 805, 281 S. W. 1024, but stepmothers are not all alike. The world knows no meanness greater than that of a bad stepmother, nor any goodness greater than that

of a good one. If the defendant belongs to the latter class, this child could be committed to no better hands than hers; and if it should hereafter be learned that the child is not being well treated and cared for, the court can then modify this order, and make such changes in the custody of the child as subsequent experience evidenced then may suggest.

The judgment is reversed, with directions to award the custody of this child to the defendant.