# Wood's Guardian v. Inter-Southern Life Insurance Company.

## Same v. New York Life Insurance Company.

(Decided March 9, 1928.)

### Appeals from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Cancellation of Instruments.—Suits by beneficiary under insurance policies to secure cancellation of assignments thereof by insured as security held to involve issues purely cognizable in court of equity.

2. Appeal and Error.—In suits involving claim for cancellation of assignments of policies, defendant insurance companies, who paid money into court, were entitled to have appeals dismissed as to, them, where judgment appealed from was not in their favor, and companies were not parties at time of its rendition.

3. Cancellation of Instruments.—Cancellation of executed contract is the exercise of the most extraordinary power of the court of equity, and should not be granted, except in clear case and on strong and convincing evidence.

4. Cancellation of Instruments.—Scintilla rule of evidence held not to apply to equitable action seeking cancellation of assignment of insurance policy, though action was on ordinary docket, not having been transferred to equity under Civil Code, sec. 10, subsec. 4.

5. Trial.—Rights of litigants are determined by the issues made by the pleadings, the relief sought, and the facts developed by the evidence, and failure of court to transfer equitable action to equity docket, as required by Civil Code, sec. 10, subsec. 4, does not affect litigants' rights or nature of action.

6. Action.—Where action is equitable in everything except in name, it must be treated as having been brought in equity.

7. Cancellation of Instruments.—In suit for cancellation of assignments of insurance policies on ground of insufficient mental capacity of assignor, refusal of court to submit case to jury under scintilla rule was not error, though case had not been transferred to

equity docket under Civil Code, sec. 10, subsec. 4, since verdict would not be ibinding, but would merely have been advisory.

8. Trial.—Verdict of jury in equitable action is not binding on court, but is merely advisory, and court may disregard it.

MORTON K. YONTS for appellant.

WILLIAM MARSHALL BULLITT, PEAK & PEAK, R. F. PEAK, E. K. MARSHALL, LEO T. WOLFORD and BRUCE & BULLITT for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Dora Wood, suing by her statutory guardian, Lincoln Bank & Trust Company, having been by the trial court denied the relief sought, has appealed.

Harry I. Wood was for many years engaged in the electrical supply and installation business in the city of Louisville. He had several policies of insurance on his life. Among these was a $2,500 policy in the New York Life Insurance Company, which was payable to his estate, and three policies aggregating $15,000, payable to his wife, Sally F. Wood. These three policies were issued by the Citizens' Life Insurance Company, Louisville, Ky., and these three contracts were thereafter assumed by the Inter-Southern Life Insurance Company. Mr. and Mrs. Wood were divorced, and thereafter Mr. Wood, exercising a right given him by the policies, changed the beneficiary in these three policies from Sally F. Wood to his daughter, Dora Wood.

As a result of the post-war deflation and misconduct of some of his employees, the various electric companies owned and controlled by Wood sustained serious losses, and, in the spring of 1922, were put into bankruptcy. Wood endeavored to borrow money with which to effect a compromise, but was unable to reach an agreement with the creditors. The assets of these electric companies were sold at a price beyond what Mr. Wood was willing to pay. He thereupon set about the organization of a new company to engage in a like business. He interested a Mr. Reinecke, and the Wood-Reinecke Electric Company was organized with a capital stock of $30,000. One hundred and fifty shares of this were taken by Mr. Reinecke, which he paid for by money he had obtained from his brother-in-law, Lieutenant Governor Ballard. Wood subscribed for three shares of stock, and his

brother-in-law Biscoe Hindman subscribed for 147 shares. Hindman loaned Wood the $15,000 to pay for this stock, and, although Hindman subscribed for 147 shares, it was understood between him and Wood that these shares would be the property of Wood. They were merely taken in the name Hindman for the purpose of organizing the corporation, and were to be held by him as collateral security for the loan of $15,000 which he made to Wood.

The 3 shares subscribed for by Wood were also turned over to Hindman, and, as further security, Wood changed the beneficiary on the four life insurance policies above mentioned, and had them made payable to Hindman. The transfer of this insurance was made between the 12th and 19th of June, 1922, and the new company started into business. It had scarcely started when, on July 14, 1922, Wood was taken ill, and on July 25 he died. The day before he died the Lincoln Bank & Trust Company became the statutory guardian of . his only child, Dora Wood. The day after he died, it, as her guardian, filed suit on the ordinary side of the docket in the common pleas branch of the Jefferson circuit court against the New York Life Insurance Company and Biscoe Hindman, pleading the issue by the insurance company of $2,500 insurance on the life of Wood, alleging that Wood was dead, that Biscoe Hindman was claiming these policies under an assignment made by Wood, that this assignment was made at a time when Wood was mentally incapable of transacting business, and in the petition as many times amended the guardian prayed for a cancellation of the assignment and for judgment against the New York Life Insurance Company for $2,500. On the same day, it filed a ' like petition against Hindman and the Inter-Southern Life Insurance Company, and asked judgment for $15,000 on the three policies that had been issued by the Citizens' Life Insurance Company and assumed by the Inter-Southern. A paper was probated as the will of Harry I. Wood, and the Louisville Trust Company qualified as executor thereof, and to it Biscoe Hindman turned over the 150 shares of stock in the Wood-Reinecke Electric Company, which he held as collateral security for the $15,000 note given him by Wood for money Hindman had advanced Wood to pay for this stock. He also turned over to the executor these insurance policies and some other property which does not concern us.

The executor, by petition, made itself a party to each of these actions. It paid the $15,000 note to Hindman, and pleadings multitudinous and multifarious then followed, so that, after about 225 pages of pleading, an issue was developed between the executor who was claiming this insurance under the transfer made to Hindman and the guardian of Dora Wood who was also claiming it and whose right to collect it, of course, depended upon her ability to secure the cancellation of the assignments to Hindman. Thus these cases were purely efforts on the part of her guardian to secure the cancellation of these assignments, matters purely cognizable in equity. By judgment of the court rendered in the spring of 1925, these insurance companies were required to pay this money into court, which they did, and were permitted to go hence without day. These cases were tried together before a jury on December 1, 1925, and, at the conclusion of the evidence, in obedience, to a peremptory instruction of the court, the jury found for the Louisville Trust Company, as executor of the estate of Harry I. Wood, and found that the assignment of the several policies on his life were made by him at a time when he was competent under the law to make such assignments. The judgment dismissing the petition of Dora Wood then followed, and from that she has appealed, and has made the executor of Harry I. Wood, Biscoe Hindman, and these insurance companies appellees.

The insurance companies entered motions to dismiss the appeals as to them because the judgment appealed from is not a judgment in their favor, and the companies were not parties to the suit at the time the judgment appealed from was rendered. These motions were passed to the merits; and, upon their consideration now, these motions are sustained as to both insurance companies, and the appeal is dismissed as to them, and they shall recover of the appellant their costs herein.

Coming now to the issue between the guardian of Dora Wood and the executor of Harry I. Wood, we find that the evidence overwhelmingly sustains the verdict of the jury; but the guardian of Dora Wood contends that she did present some evidence tending to show that, at the time these transfers were made, her father did not have sufficient mental capacity to make them, and it is argued that, under the scintilla rule, the matter should have been submitted to the jury. We have said that this effort to cancel the transfer of this insurance was of

purely equitable cognizance. In other words, the court was asked to cancel a contract by which Woods changed the beneficiary of this insurance and made it payable to Hindman.

"The cancellation of an executed contract is the exertion of the most extraordinary power of a court of equity, which ought not to be exercised except in a clear case and on strong and convincing evidence." Lossie v. Central Trust Co., 219 Ky. 1, 292 S. W. 338.

If this were purely an ordinary action, the scintilla rule would apply, but it was an equitable action, though on the ordinary docket, and, being such, it must be governed by those rules applicable to equitable actions. The rights of litigants are determined by the issues made by the pleadings, the relief sought, and the facts developed by the evidence. The court, under subsection 4 of section 10, Civil Code, should have transferred the cause to the equity docket, and, though it failed to do so, the rights of the litigants were not thereby affected. In Shelton v. Hensley, 221 Ky. 808, 299 S. W. 979, we said:

> "The name given to a pleading is not controlling, but its character is always to be determined by its allegations."

Likewise the nature of an action, whether ordinary or equitable, depends upon the issues made and the relief sought, not the docket on which it is placed. In the Shelton case we cited the old "bear illustration," and said:

> "A bear well painted and drawn to the life is yet the picture of a bear, although the painter may omit to write over it, 'This is the bear.' "

—and we will add now this would still be the picture of a bear, though the painter should modify it by painting a corral around and about the animal, and should write over it, "This is a mule."

In Fraley v. Peters, 75 Ky. (12 Bush) 469, an ordinary action had been brought in equity, and had been tried as such. In disposing of that case we said:

> "Having been an ordinary action in everything except in name, it must be treated here as if it had the name also."

So, turning this case around, it would follow that, where an action is an equitable action in everything except in name, it must be treated here as if it had been

brought in equity. Hence we conclude that the verdict of the jury in this case would not have been binding on the court but would merely have been advisory, and the court could have disregarded it. The scintilla rule does not apply. The evidence abundantly supports the verdict.

The judgment is affirmed.