### Smith et al. v. Graf et al.
### Cox et al. v. Same.
(Decided April 19, 1935.)

(Rehearing Denied June 14, 1935.)

NAPIER & EBLEN and JOHN W. CAUDILL for appellants.

COMBS & COMBS and H. H. SMITH for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

458

On August 23, 1926, R. J. Graf and Beaver Creek Consolidated Coal Company sued Adam Smith et al., to quiet their title to the oil and gas under and appurtenant to two tracts of land. They were successful, and Smith et al. have appealed.

On November 22, 1926, the same plaintiffs filed a similar suit against Eliza Cox et al. relative to another tract, they were again successful, and Eliza Cox et al. have appealed.

In each of these petitions the plaintiffs alleged that the Beaver Creek Consolidated Coal Company owned one-eighth, and that R. J. Graf owned seven-eighths of the oil, etc., under the property described. During the pendency of the proceedings, on December 1, 1927, Graf sold to the appellee Kentucky-West Virginia Gas Company, a West Virginia corporation, all his interests in the premises. The Kentucky-West Virginia Gas Company is treated throughout the record as being the same as the Kentucky and West Virginia Gas Company, and we shall do the same. We shall for our convenience itemize and letter the history involved in these cases.

Because of the similarity of the issues, these two cases were heard together in the trial court, and have been brought together to this court. We have considered them together, and shall dispose of them in one opinion and as near as we can together.

The Smith Case.

(a) Benjamin Smith, under whom Adam Smith et al. claim, owned about 1,144 acres of land on Jones' Fork of Beaver creek in Knott county.

On August 31, 1901, he leased this land for oil and gas to Guffey, Gayley & Co. for twenty years on a yearly delay rental of 10 cents per acre. It is stipulated that this lease as well as the similar lease given by William J. Cox to Rhoda Craft have long since expired and no oil or gas wells whatever were ever drilled under either of said leases.

(b) On December 20, 1901, for a consideration of $1 per acre of which $100 was then paid in cash and the balance was to be paid in one year, or as soon as the property could be surveyed and the title examined, and by a very elaborate printed contract, Benjamin Smith sold and obligated himself to convey to the Ohio & Big

Sandy Land Association (a West Virginia corporation) certain property and rights of which we regard the following as being all that is necessary to copy:

"All the coal, minerals and mineral products, all oils and gases, all salt minerals and salt water, fire and potters clay, all iron and iron ore, all stone, and such of the standing timber as may be, or by the 'Grantee' be deemed, necessary for mining purposes, and including timber necessary for railroads."

This contract contained this provision:

"*It is understood there is an oil lease on this tract of land which includes the oil and gas.*"

It seems there was even then some sort of an understanding by which the Northern Coal & Coke Company (another West Virginia corporation) was to take over and complete the contract of December 20, 1901.

(c) On May 6, 1903, Benjamin Smith and wife, for a consideration of $1,149.35, executed a most elaborate printed deed to the Northern Coal & Coke Company by which they conveyed to it many properties and rights in this 1,144 acres, of which we copy the following:

"All coal, minerals, and mineral substances and products; all oils and gases; all salt and salt mineral waters; all fire and potters clay; all iron and iron ores; all stone; all slate; all ores and mines; and subterranean substances and products; and all combinations of same or any or all of same situated, lying and being in, on or under the land; * * * and also the exclusive right to enter upon said land and drill thereupon for oil and gas, and to pump for and store the same upon said land, and remove, pipe and transport the same therefrom; * * * including but not limiting to that of drilling, mining, pumping and therefrom removing or otherwise utilizing the said * * * timber, coal, minerals, slate, oil, gas, salt water, clay, iron, ore, mines, stone and subterranean substances and products thereof, * * * the free right of ingress, egress and regress in, on, to, over, upon, under and through said land for all purposes."

This deed contained this provision:

> *"It is understood that there is an oil lease on both tracts of this land, and the grantor has the benefit of said lease."*

After being acknowledged, this deed was recorded August 28, 1903. This deed was one of those all-embracing documents of which we said in Watts v. Carrs Fork Coal Company, 230 Ky. 273, 18 S. W. (2d) 1107, that about the only right it left the grantor, was to pay the taxes.

(d) On August 31, 1905, Benjamin Smith filed an equity suit in the Knott circuit court to set aside the deed and contract for these minerals upon the ground of mental incompetency. The Northern Coal & Coke Company removed the action to the United States District Court for the Eastern District of Kentucky, where it was later dismissed without prejudice for want of prosecution.

(e) Benjamin Smith died intestate in 1906, and shortly thereafter his daughter, Polly Wicker, died intestate. The children and heirs left by them are these:

|  |  |  |
|---|---|---|
|  | John E. Smith |  |
|  | Adam Smith | ⌠Osa Wicker |
| Benjamin Smith....... | Polly Wicker........⟨ Arthur Wicker |
|  | Susie Osborn | ⌞Edgell Wicker |
|  | Daisy Dudley |  |

(f) On June 12, 1909, the Ohio & Big Sandy Land Association conveyed to the Northern Coal & Coke Company all its property in Pike, Floyd, Letcher, Knott, and Magoffin counties in the state of Kentucky, and ratified all deeds parties had theretofore made to the Northern Coal & Coke Company.

(g) On May 4, 1910, the Northern Coal & Coke Company conveyed to the Beaver Creek Consolidated Coal Company (another West Virginia corporation) a number of properties, one of which was the Benjamin Smith tract, and after the description of it there appears in that deed this provision:

> *"It is understood that there is an oil lease on the above described tract of land and the benefit of said oil lease is reserved to the said Benjamin Smith and wife."*

There was also included in this conveyance a tract of

land acquired from William J. Cox July 7, 1903, and following the description of it there is this provision:

> *"It is understood that there is an oil and gas lease on this tract of land and said William J. Cox is to have the benefit of same, and if any damage is done to buildings, orchard or garden, said William J. Cox is to have reasonable pay therefor."*

### Suit Begun in U. S. Court.

(h) On October 12, 1911, the above-named heirs of Benjamin Smith began a suit in chancery in United States District Court for Eastern District of Kentucky against the Northern Coal & Coke Company and Beaver Creek Consolidated Coal Company to cancel the deed of May 6, 1903, by which they allege he conveyed to the Northern Coal & Coke Company divers properties and rights, of which we only copy the following:

> "(a) All the coal, minerals, and mineral substances and products; (b) all oils and gases, all salt and salt mineral water; (c) all fire and potters clay; (d) all iron and iron ore; (e) all stone, all ores and mines and all subterranean substances; * * * (i) and also the exclusive right to enter upon said land and drill thereupon for oil and gas, and to pump for, and store the same upon said land, and remove the pipe and transport same therefrom."

They sought to have the said deed canceled because, as they said, Benjamin Smith was not then of sound mind; the deed was not properly executed or acknowledged, etc. The Northern Coal & Coke Company answered and disclaimed any further interest in the land.

On December 13, 1911, John E. Smith et al. amended this bill and prayed in the alternative that, if this deed cannot be canceled, they have judgment against the defendants for $27,464.40. After preparation and submission, the action by John E. Smith et al. was dismissed by the court, November 19, 1920.

(i) On February 14, 1920, the Beaver Creek Consolidated Coal Company leased several properties, among which were those acquired from Benjamin Smith and Wm. J. Cox, to the Kentucky Coke Company.

On May 20, 1922, the Kentucky Coke Company sold its interest in the premises to the Ivyton Oil & Gas

Company. On February 1st, 1927, the Ivyton Oil & Gas Company transferred its interest to the Kentucky-West Virginia Gas Company.

(j) On June 1, 1926, for and in consideration of a reserved royalty of one-eighth of all the oil produced and sold therefrom, and other considerations, the Beaver Creek Consolidated Coal Company sold to R. J. Graf all the oil and/or gas to be found upon and within certain described tracts of land in Knott county aggregating 16,181.59 acres, in which there was described and included the 1,144.35 acres it had bought of Benjamin Smith and the 260.9 acres it had bought of William J. Cox; these tracts being identified and described by reference to the books and pages where the deeds are recorded.

### The Litigation Before Us.

(k) This sale seemed to arouse such opposition upon the part of the surface owners that Graf and the Beaver Creek Consolidated Coal Company on August 23, 1926, began in the Knott circuit court this action to quiet their title to the oil and gas. The appellants, with the exception of John E. Smith, were made defendants. These defendants now appellants first removed the case to the United States District Court for the Eastern District of Kentucky, wherein it pended for some time, but later, and before any adjudication there, the order of removal was set aside by agreement of all parties and the case brought back to the Knott circuit court, where on October 17, 1931, the defendants filed an answer and counterclaim, in the first paragraph of which they traversed the petition and then pleaded affirmatively a counterclaim which we shall consider later.

(1) The plaintiffs by reply traversed this answer and counterclaim, then pleaded affirmatively limitations and laches, and that they were bona fide purchasers without notice. The parties even filed a rejoinder and a surrejoinder, but these pleas amount to nothing more than ''did'' ''didn't''; anyway everything was in issue.

On August 15, 1932, the plaintiffs, now appellees, amended their reply, and with great elaboration pleaded the adjudication in the United States District Court in bar of the claims asserted by the defendants in their counterclaim.

On that same day the plaintiffs, now appellees, amended their petition and made, John E. Smith, who was a son of Benjamin Smith, a party defendant, and by agreement he entered his appearance and was made a defendant as if made so originally, and all pleadings were by agreement adopted as to John E. Smith and all evidence was to be treated as if he had originally been made a defendant.

Also on that day it was agreed that the Kentucky-West Virginia Gas Company, the vendee of R. J. Graf, be made a party plaintiff in lieu of Graf. Also this agreement was filed on August 15, 1932:

"It is agreed by and between the parties to this suit that Daisy Dudley, Susan Osborn, John E. Smith, E. B. Osborn and defendant, Adam Smith, after October 12, 1911, executed several deeds of conveyance for separate portions of the land described in the petition herein which deeds are claimed by defendants herein to have conveyed the oil and gas in said respective portions of said lands, and it is agreed that the claims of the defendants herein, other than such of them as are heirs of Benjamin Smith, are derived solely from said deeds. The other defendants hereto claim as heirs of Benjamin Smith. The said Daisy Dudley, Susan Osborn, and Adam Smith were plaintiffs in a suit filed in the United States Circuit Court for the Eastern District of Kentucky at Catlettsburg, Kentucky, on October 12, 1911, a certified copy of the pleadings, orders and decrees in which have been filed with plaintiffs' depositions in this case. The stipulation may be filed and read as evidence on the trial of this case with the same force and effect as if said above mentioned facts had been proved by the depositions of witnesses, subject to competency and legal excepceptions, the object of this stipulation being to save costs."

This agreement shows that all our appellants were either parties to the suit in the federal court, or else they bought after it was filed from parties who were parties to that suit; hence all are bound thereby.

Therefore the appellants J. B. Wicker and W. M. Hall, who bought from some of these Smith heirs after the institution of the suit in the federal court, simply

stand in the shoes of their vendors and are bound by that judgment the same as their vendors are.

On August 18, 1932, the following cases were consolidated and submitted for judgment: R. J. Graf et al. v. Adam Smith et al., R. J. Graf et al. v. Eliza Cox et al., and R. J. Graf et al. v. Nancy Wicker et al. The last-named case has not been appealed, so we will mention it no more, but the second named case has been appealed, so it becomes necessary that it be mentioned.

### The Cox Case.

(m) On June 2, 1903, Wm. J. Cox gave a title bond to the Duncan Coal & Iron Company which was practically identical with the bond Smith gave. In this bond this appears:

*"It is understood there is an oil and gas lease on this land."*

(n) On July 7, 1903, Wm. J. Cox and Eliza Cox, his wife, executed a printed deed of their minerals to the Northern Coal & Coke Company identical in most respects with the deed made by Smith described in item (c) above. They had previously signed a contract to Duncan Coal & Iron Company, which was made by filling in a printed form like the one signed by Smith. See item (b), supra. On June 11, 1909, this company made to the Northern Coal & Coke Company a deed similar to the one described in item (f) supra. From this point on this title followed same course as the minerals in the Smith case. See items (g), (i), and (j).

Wm. J. Cox and his wife Eliza, on July 17, 1925, conveyed a portion of their surface rights to Bee Cox, reserving to themselves the control of it during their lives and imposing upon Bee Cox the obligation to support the said grantors.

It is claimed the remainder of this Cox land was conveyed to Pat Cox under similar terms, but that deed is not in this record. Wm. J. Cox died about 1926. There were eight of these Cox children. While this suit to quiet title was pending, Bee Cox and Pat Cox, together with their wives and their mother, on April 30, 1930, executed a deed to the other six children by which they conveyed them the following property on the following terms:

"One eighth part to each named second party of oil and gas on the Eliza Cox and Bee and Pat Cox farm on condition providing each one of the second parties will pay their part of the cost of the suit which is now pending in court and if either one of the parties should fail if the rest gains the suit the one that should fail to pay his part he is not entitled to any oil or gas."

The suit against Eliza Cox et al. is of the same nature as the suit against Adam Smith et al. They were represented by the same counsel, made the same counterclaims, defenses, etc. We shall state one by one these defenses or counterclaims and dispose of them as we state them.

First. They allege that they the defendants, now appellants, were then and had been for more than fifteen years before the institution of this action the owners in fee simple of the surface and the oil and gas in the tract of land set up and described in the petition, and that they and those under whom they claim had been for more than fifteen years in the actual, open, notorious, continuous, exclusive and adverse possession of it, claiming, occupying, using, controlling, leasing, and drilling oil and gas wells thereon.

Appellees admit that the appellants, defendants below, are in possession of the surface and are rightfully so, for they own it, but the possession by the appellants of the oil and gas is disputed, and the only evidence the appellants have of such possession is that they have given some leases under which they have collected some rentals. It would make no difference if they had executed a lease every month for 30 years and had collected rent under all of them; that would not be an adverse possession of the oil and gas. Disseisin can only be wrought upon the property itself; it cannot be accomplished by recording deeds or leases in the county clerk's office. See Piney Oil & Gas Co. v. Scott, 258 Ky. 57, 79 S. W. (2d) 394.

It is true that one of the appellants W. M. Hall, who had bought a portion of this Smith land from Daisy Dudley and another portion from Adam Smith, on October 2, 1922, executed a lease to the Ivyton Oil & Gas Company, and that the Ivyton Company drilled a well.

We know from item (i), supra, that the Ivyton Oil & Gas Company then had a lease on this property which it had acquired from the Kentucky Coke Company. Thus its possession under Hall's lease was not exclusive. It was holding under two leases. Moreover, this lease and the Ivyton Company's possession under it could be of little avail to Hall if it were exclusive, since this suit to quiet title was begun less than four years thereafter. This is the only drilling that was ever done on either the Smith land or the Cox land. It is true Hall and others have been and now are in possession of the surface of this land and are rightfully so, but in so far as that possession is concerned they are, so far as the minerals are concerned, only holding possession of them as trustees for the appellees. See section 2366a-1 Ky. Stats., and Piney Oil & Gas Co. v. Scott, 258 Ky. 57, 79 S. W. (2d) 394.

This results from the ownership of the minerals having been severed from the ownership of the surface by the deeds made by Cox and Smith more than 30 years ago.

Second. They allege the claim of plaintiffs, now appellees, was unfounded, old, stale, worthless, and barred by the statutes of limitations.

The appellees are claiming these minerals under these deeds made by Cox and Smith, by which they acquired them. They have made no effort to use or exploit these minerals, but they are under no obligation to do so, and their failure to do so does not render their claims unfounded, old, stale, worthless, or bar them by limitations.

Third. They allege that they had such possession on May 4, 1910, when with full knowledge thereof the Beaver Creek Consolidated Coal Company took a deed for its alleged interests, and hence its deed was champertous; that the same was true on June 1, 1926, when Graf took his deed, hence it was champertous.

The possession of the surface which the appellants had after the severance of the title to the minerals from the title to the surface was not adverse to the owners of the minerals. See Ky. Stats. sec. 2366a-1, and Piney Oil & Gas Co. v. Scott, 258 Ky. 57, 79 S. W. (2d) 394; hence these deeds were not champertous.

Fourth. They allege that this oil and gas was never conveyed by Cox or Benjamin Smith, but was excepted therefrom by this provision in each of the deeds they made:

"It is understood that there is an oil lease on both tracts of this land, and the grantor has the benefit of said lease."

That this oil and gas was excepted from the deed to the Beaver Creek Consolidated Coal Company by this provision in the deed it took:

"It is understood that there is an oil lease on the above described tract of land and the benefit of said oil lease is reserved to the said Benjamin Smith and wife."

A similar provision was set out relative to the Cox land. That because of their knowledge of the adverse possession of this oil and gas then had and maintained by the defendants and because of the exceptions in their deeds the plaintiffs, now appellees, are estopped to recover this oil and gas.

This identical phrase has been correctly construed in the case of Elkhorn Coal Corporation v. Casebolt (C. C. A.) 38 F. (2d) 37, where the question was decided adversely to the contention of the appellants, the holding of the court being:

"In mineral deed, phrase, 'it is understood there is an oil and gas lease on this tract of land, and grantor is to have benefit of said lease,' reserved to grantor rents and royalties to be derived from oil and gas lease only so long as lease existed."

The leases referred to being now at an end, all rights of those claiming under Cox and Smith by virtue of this phrase are also at an end.

Fifth. They allege that by mutual mistake the deed from Benjamin Smith to Northern Coal & Coke Company does not state the true intention of the parties, and defendants ask that it be so reformed as to exclude and except the oil and gas therefrom.

The appellants have some evidence to sustain this contention, and the appellees have none, but the quarter of a century that elapsed after Cox and Smith made these deeds before this effort was made to reform them

puts them beyond attack now. See sections 2515 and 2519, Ky. Stats. Moreover, if the defendants should discover some way to avoid or reform the deeds made by Cox and Smith there would still remain the title bonds these men had previously given (see items (b) and (m) supra) which have not been attacked in either pleading or proof.

Exactly this same situation was presented in Daugherty v. Northern Coal & Coke Co., 174 Ky. 423, 192 S. W. 501, 503, and we said:

"So far as this record is concerned, the deed attacked was but a compliance with the contract which is not attacked and which a court of equity would enforce in a suit for specific performance, and manifestly that which equity will enforce it will uphold, when executed by the parties, and will refuse to cancel it in a suit brought for that purpose."

Judge Cochran, when disposing of the case in the United States court, supra, said:

"The attack is upon the deed made by Smith May 20, 1903. No attack is made on the title bond made December 20, 1901, pursuant to which the deed was made. If the deed were cancelled the title bond would stand and the defendant, Beaver Creek Consolidated Coal Company would be entitled to a deed pursuant to the bond."

Appellants contend no title bonds were ever executed by either Benjamin Smith or Wm. J. Cox, and that the papers mentioned in items (b) and (m) are not title bonds because forsooth there is printed across the tops of them the words: "Agreement For Rights." This takes us back to the old bear illustration in Wood's Guardian v. Inter-Southern Life Ins. Co., 224 Ky. 579, 6 S. W. (2d) 712. When a legal document is up for consideration its nature is determined by its language and the resulting obligations, rights, etc., that flow therefrom and not by the name or style that may be written or printed thereon. Shelton v. Hensley, 221 Ky. 808, 299 S. W. 979.

What Judge Cochran said was not dictum; it was part and parcel of the reasoning which led up to the dismissal of the claim asserted by the Smiths in that action. He was talking about one of these agreements

for rights. He called it a "Title Bond." He was right in doing so, for such it is.

The appellants have argued long and strenuously for the reformation of these deeds so as to exclude from them the oil and gas, but they must remember the reformation or cancellation of a contract is the exercise of the most extraordinary power of a court of equity which ought never to be exercised except upon clear and convincing evidence, and certainly they cannot expect after all these years, and after the rights and properties mentioned in these deeds have passed into the hands of bona fide purchasers, that this court upon the evidence they have will strike out of these deeds the words "oil and gas" and other provisions regarding them that were so solemnly written there so long ago and then signed and acknowledged by the very men under whom all these parties are claiming.

The appellants cite the case of Eastern Gulf Oil Co. v. Lovelace, 188 Ky. 238, 243, 221 S. W. 544, and argue that limitations are not available against them because they were held to not be available against the defendants in that case, but the reason limitations are applicable in this case and were not in that case is the defendants here are asking for affirmative relief (reformation of a deed), and there they were not.

The Kentucky-West Virginia Gas Co., of course, had notice of the italicized parts of items (b), (c), (g), and (m), but that notice does not prevent it from being a bona fide purchaser. It took its rights subject to such construction as the courts might put upon these exceptions and that construction we have given above, where we adopted the construction given in Elkhorn Coal Corp. v. Casebolt.

Sixth. They allege that the plaintiffs are annoying and harassing them in the enjoyment of their property, and that their title should be quieted.

The plaintiffs (appellees here) are not annoying or harassing the defendants any further than they have a right to do under the deeds made by Cox and Smith.

As to the Smiths and those claiming under them, the adjudication in the United States court is a complete bar. It is true the Cox land was not involved in that litigation, but aside from that adjudication, and

for other reasons which we have stated, the judgment was correct as to those claiming under either Cox or Smith.

Some of the deeds in the appellee's chain of title are, so the appellants claim, mere quitclaim deeds. The appellants have seized on that and have said quite a bit about it, but a grantor's title to real property may be as effectually conveyed by a quitclaim deed as by any other form of conveyance. See Hosman v. Willett, 107 S. W. 334, 32 Ky. Law Rep. 906; 18 C. J. 313, sec. 298. We find no error in the judgment of which the appellants can complain.

The thirty years war is at an end.

The judgment is affirmed.