[Perolio, et al. v. Doe, ex dem. Woodward Iron Co.]

# Perolio, *et al. v.* Doe, *ex dem.* Woodward Iron Co.

## Ejectment.

(Decided November 16, 1916.   73 South. 197.)

1. **Ejectment; Plea; Not Guilty.**—Where the action is common law eject-ment, the plea of not guilty is the equivalent of the consent rule, requiring defendant, as a condition to controverting the lessor's title, to admit the truth of the fictitious averment of lease, entry and ouster.

2. **Appeal and Error; Presumption; Record.**—Where the record of a cer-tain trial was introduced in evidence, but the bill of exceptions failed to set it out, the appellate court will indulge presumptions necessary to support the action of the trial court in overruling objections to the introduction of such record.

3. **Ejectment; Common Title.**—Where both parties in ejectment claim from a common source of title, neither party can deny the title of the com-mon source, nor need title be traced beyond such common source.

4. **Judgment; Conclusiveness; Collateral Attack.**—After twenty years a judgment in a suit to enforce a vendor's lien is not open to collateral attack for fraud and collusion by persons claiming under the alleged actor of the fraud.

5. **Judgment; Admissibility.**—A record and proceeding in a former ac-tion involving foreclosure of a vendor's lien upon the land involved in the ejectment suit, are admissible in evidence in the ejectment suit.

6. **Ejectment; Title.**—Where the common ancestor was in possession un-der claim of title, and plaintiff's ancestor acquired the right of such common ancestor under a suit to enforce a vendor's lien, such title was sufficient to support common law ejectment as against defendants claiming under the same common ancestor, until they showed a better right.

7. **Adverse Possession; Color.**—In the absence of color of title one claim-ing property by adverse possession must show actual possession, since a mere trespasser can acquire title to that portion of the realty only which he actually occupies.

8. **Same; Evidence.**—The evidence examined and held not sufficient to show adverse possession of the land for ten years.

9. **Ejectment; Presumption.**—Where several demises of the land are laid in the complaint, each lessor is presumed to have consented to the action, and to the use of his or her title by the nominal plaintiff.

10. **Same; Burden of Proof.**—In common law ejectment plaintiff's right of recovery is dependnt on a legal title in a person in whom the demise is laid, and is not defeated by proof that defendant was in adverse possession of the land at the time another person in whom a demise was laid, conveyed to plaintiff.

11. **Evidence; Declaration.**—It was not error to exclude .evidence as to whether one person heard another person say anything about the death of a

[Perolio, et al. v. Doe, ex dem. Woodward Iron Co.]

third person, or when he died, since to render admissible the declaration of a member of a family as to pedigree, family history or repute, it must appear that the member making the declaration is dead, insane, or permanently or indefinitely beyond the jurisdiction of the court.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Ejectment by the Woodward Iron Company against Louis Perolio and others. Judgment for plaintiffs and defendant appeals. Affirmed.

J. B. AIRD, N. B. FEAGIN, and SMITH & McCARY, for appellant. CABANISS & BOWIE, for appellee.

THOMAS, J.—This is a common-law action of ejectment, brought by the Woodward Iron Company, a corporation, against the appellants, Louis and Mary Perolio.

The demise was laid in different counts of the complaint, in the several lessors. The defendants, for answer to the complaint, pleaded "not guilty" of the matters alleged therein. A jury being waived, the court heard the cause and rendered judgment for the plaintiff for the land the subject of the suit.

(1) In a common-law action of ejectment, the plea of not guilty is the equivalent of the "consent rule," which requires the defendant, as a condition to controverting the lessor's title, to admit the truth of the "fictitious averments of lease, entry, and ouster."—*King v. Kent*, 29 Ala. 546, 556; *Clarke v. Clarke*, 51 Ala. 498; *Sledge v. Swift*, 51 Ala. 386; *Bernstein v. Humes*, 60 Ala. 582, 597, 31 Am. Rep. 52; *Swann v. Kidd*, 78 Ala. 173; *Bynum v. Gold*, 106 Ala. 427, 17 South. 667; *Newton v. L. & N. R. R. Co.*, 110 Ala. 474, 19 South. 19; Black, Law Dict. 254, 255.

The bill of exceptions in this case fails to set out the record in the suit brought by G. B. Marshall against W. C. Gilmore, to enforce a vendor's lien on the lands in controversy, notwithstanding the fact that it recites that the whole file in that cause was introduced, that publication was made against the nonresident defendant, and that all the proceedings were regular. The only parts of the record in said cause offered in evidence, shown by this bill of exceptions, are the original bill and the decree.

(2) In the decree in the *Marshall-Gilmore Case*, it is recited that the cause was submitted on the original bill, the decree pro confesso, and the testimony noted by the clerk and register. The

[Perolio, et al. v. Doe, ex dem. Woodward Iron Co.]

bill of exceptions in this case failing to set out this record, we will indulge the presumption necessary to support the action of the lower court in overruling defendants' objections to the introduction of such evidence, and in finding, as it did by its judgment, that the proceeding in said cause of *Marshall v. Gilmore* was sufficient to divest the title to the lands in question out of Gilmore and to vest the same in Marshall.

The bill in the case of *Marshall v. Gilmore,* filed in the city court of Birmingham, was for the enforcement of a vendor's lien on the land in question. It was therein averred that on August 9, 1882, one W. R. Medlin sold these lands to Gilmore and put him in possession of the same; that Gilmore secured the payment of the purchase money by his note, describing the land, made payable to Medlin on the 1st day of March, 1883; that on June 27, 1885, said vendor, Medlin, sold and transferred this note to G. B. Marshall; and that said note was due at the time the bill in said cause was filed. The bill further prayed for service on defendant Gilmore, as a nonresident, for an ascertainment of the amount of the purchase money, to have declared a lien on the land for the amount of said balance due, and to have decreed a sale of the land for the payment thereof. On final hearing May 7, 1886, a vendor's lien was declared in favor of Marshall, and a sale was ordered pursuant to the statute then governing in the sale of lands belonging to a nonresident defendant.—Code 1876, § 3834. At the sale under this decree Marshall became the purchaser, and the sale was reported by the register and duly confirmed. On this trial plaintiff introduced in evidence said deed executed, pursuant to said decree, by the clerk and register, to Marshall, of date June 8, 1888, duly recorded, conveying the lands in question. Defendants objected to its introduction on the ground that the bill showed that the court, in the aforesaid suit, had no jurisdiction to decree the sale of the land; and reserved an exception to the adverse ruling of the court. Plaintiff then offered in evidence the deed to said lands, duly executed and recorded, of date May 1, 1886, by W. R. Medlin and wife to G. B. Marshall; and defendants objected and excepted to the introduction in evidence of said deed, on the ground that the lands were held adversely by the defendants and those under whom they claimed title, at the time of said conveyance.

(3) It is clear that both parties claim title from a common course—W. C. Gilmore. The plaintiff claims through the en-

forcement of said vendor's lien, and the defendant, as heir and by purchase from Gilmore's children. Undoubtedly, Gilmore had an interest in the land at the time of the enforcement of the vendor's lien, that the chancery court had the power to sell, though Medlin was not made a party to that proceeding. Neither party in this case can deny the title of Gilmore, nor was it necessary to trace title beyond Gilmore.—*Pollard v. Cocke*, 19 Ala. 188; *Gantt v. Cowan*, 27 Ala. 582; *Matkin v. Marx*, 96 Ala. 501, 11 South. 633; *F. B. & I. Co. v. Schall*, 107 Ala. 531, 18 South. 108.

(4) So far as this record shows, Gilmore's purchase of the land was from Medlin, on the date indicated, notwithstanding the tendency of the testimony to show that he had been in possession thereof before said purchase. This court cannot conclude, on such possession by Gilmore, that the allegation in the bill that Medlin sold to Gilmore and put him in possession of the land in 1882, and that Gilmore executed his note for the purchase money, was conclusive of collusion on the part of Medlin and Gilmore to defraud Gilmore's wife of a homestead right. No such defense was made to the suit by Marshall against Gilmore to enforce his lien. This question is not now open to collateral attack by Gilmore or by those claiming under him. The plaintiff, Marshall, however, foreclosed any possibility of Medlin's having an outstanding title or interest in and to said lands, by offering in evidence a deed, duly executed and recorded, by W. R. Medlin and wife to G. B. Marshall, conveying the land in dispute to him, before the foreclosure of the vendor's lien was completed in the chancery court.

(5) There was no error in admitting in evidence the record of the original proceedings in said suit in equity of G. B. Marshall and W. C. Gilmore, and the deed of the clerk and register made pursuant to the decree of sale.

(6) Defendant in the former suit, W. C. Gilmore, the ancestor and immediate predecessor in title of defendants in this suit, was in possession of the lands under claim of title from Medlin; and by purchase at said sale Marshall acquired Gilmore's right of possession. This right therefore passed by mesne conveyances to the plaintiff in this cause. It was sufficient to support a common-law action of ejectment, as against the defendants, unless they show a better right.—*McCall v. Pryor*, 17 Ala. 553; *Clarke v. Clarke's Adm'r*, 51 Ala. 498; *Bradshaw v. Emory*, 65 Ala. 208; *Beard v. Ryan*, 78 Ala. 37; *Payne v. Crawford*, 102 Ala. 387, 14

[Perolio, et al. v. Doe, ex dem. Woodward Iron Co.]

South. 854; *Dodge v. Irvington Land Co.,* 158 Ala. 91, 48 South. 383, 22 L. R. A. (N. S.) 1100.

In the *Dodge Case,* the court said: "The plaintiff's right to recover is founded upon the principle that 'possession of lands is prima facie evidence of title, and is sufficient evidence against all who do not show a prior possession or a better title.' * * * This principle in no wise contravenes the doctrine that the plaintiff in ejectment must recover, if at all, upon the strength of his own title, and not on the mere weakness of that of his adversary. It simply accords to his possession, as evidence, a presumption of title, which must be rebutted or overcome by his adversary; and this his adversary may do, if not a bare trespasser, and he has not the legal title, by showing his antecedent actual possession, or an outstanding title in a third party, or that plaintiff's title was subordinate or permissive, or that the action is barred by the statute of limitations."

This case has been cited with approval on this point, in *Carter v. Walker,* 186 Ala. 140, 65 South. 170; *Holder v. Bain,* 185 Ala. 590, 64 South. 292; *Hornsby v. Tucker,* 180 Ala. 418, 61 South. 928; *Fletcher, et al. v. Riley,* 169 Ala. 433, 53 South. 816; *Owen v. Moxon,* 167 Ala. 621, 52 South. 527.

(7) In the absence of color of title, it is incumbent upon a defendant to show actual possession of the real property in question; that is to say, such possession as, from its nature, it is susceptible of. A mere trespasser can acquire title to only that portion of real property which he actually occupies.—*Ala. S. L. Co. v. Matthews,* 168 Ala. 200, 53 South. 174; *Black v. T. C. I. & R. R. Co.,* 93 Ala. 109, 9 South. 537; *Lucy v. Tenn. & Coosa R. R. R. Co.,* 92 Ala. 246, 8 South. 806; *Hughes v. Anderson,* 79 Ala. 209; *Burks v. Mitchell,* 78 Ala. 61.

(8) The evidence does not show that defendant's possession was open, notorious, exclusive, hostile, or continuous for ten years.—*Croft v. Thornton,* 125 Ala. 391, 28 South. 84; *Powers v. Hatter,* 152 Ala. 636, 44 South. 859; *Burks v. Mitchell,* 78 Ala. 61; *Reddick v. Long,* 124 Ala. 260, 27 South. 402. Indeed, from defendant Louis Perolio's evidence it could not be said that he was in the adverse possession of any well-defined part of the land in controversy. He does not claim to have entered on any portion thereof until the latter part of 1890. He states that three months later he built a home thereon, but does not say where this house was located, nor that the lands were then inclosed or culti-

vated ·by him.  The deed made by the clerk and register of the city court of Birmingham to G. B. Marshall was of date June 8, 1888, and the deed from Marshall to George M. Morrow was executed in August, 1890; Morrow conveying to Pratt Iron, Coal & Railway Company.  The evidence fails to specifically define Perolio's possession as adverse, or to connect Perolio's possession, such as it was, with Mrs. W. C. Gilmore, nor was it shown that she was in the adverse possession of any part of the land at the time the deeds were made.    There   being no evidence of such adverse holding, the court properly admitted in evidence the deeds from Marshall and wife to Morrow, and from Morrow and wife to Pratt Iron, Coal & Railway Company.

(9)  Where several demises of the land are laid in the complaint, each lessor is presumed to have consented to the action, and to the use of his or her title by the nominal plaintiff.— *Stringfellow v. T. C. I. & R. R. Co.,* 117 Ala. 250, 22 South. 997; *Murray v. Hoyle,* 92 Ala. 559, 9 South. 368; *Bernstein·v. Humes, supra, Doe, ex dem. Trotter v. Moog,* 150 Ala. 460, 43 South. 710; *Croft v. Doe, ex dem. Thornton,* 125 Ala. 391, 28 South. 84; *Glidden v. Doe, ex dem. Andrews,* 10 Ala. 167.

In the *Croft Case, supra,* the court said:

"It is also well understood that in an action of ejectment the plaintiff may recover by showing the legal title to be in any one of the persons in whom a demise is laid."

So in the *Moog Case, supra,* this court had to say:    "The appellee claims that, as the evidence and admissions in the bill of exceptions show that the defendant was in the adverse possession of the lot in question at the time of the conveyance by Armant to the plaintiff, the deed was void as to the defendant, and therefore the plaintiff could not recover.   If this were statutory action of ejectment, there would be force in this suggestion; but it is a common-law action of ejectment, in which the plaintiff may recover by showing the legal title in any one of the persons in whom a demise is laid.   *   *   *   The plaintiff laid one of the demises in Adolph Armant (the common source of title) on the 1st day of November, 1896.   The subsequent adverse possession cannot prevail against this demise."

Again, in *Etowah Mining Co. v. Doe, ex dem. Carlisle,* 127 Ala. 663, 667, 29 South. 7, 8, our court discussed the subject in this tenor:   "Mr. Tyler on Ejectment (page 388) forcibly states the advantages of common-law ejectment as follows:   'The de-

mise must be laid in the name of the party who has the legal title, and when any doubt exists upon the point it is usual to declare upon several distinct demises by the several concerned in interest, and the claimants will not then be confined at the trial to one particular demise, but will be allowed to resort to any included in the declaration under which they may be able to prove title to the premises.' To the same effect is Tillinghast's Adams, p. 189. Each demise laid is a separate and distinct count in the declaration, and in the nature of a separate suit, since the lessor is the real party plaintiff; the fictitious person, John Doe, being treated and regarded only as nominal plaintiff: The separateness of the demises is recognized in the case of *Stringfellow v. Tenn. Coal, Iron & Railroad Co.*, 117 Ala. 250 [22 South. 997], and in *Glidden v. Doe, ex dem. Andrews, et al.*, 10 Ala. 166."

(10) It is thus clear that in common-law ejectment the plaintiff's right of recovery is dependent on his showing legal title in a person in whom a demise is laid, and this right is not defeated by proof that the defendant was in the adverse possession of the land at the time another person (in whom a demise was laid) conveyed to plaintiff.—*Swift, et al. v. Doe, ex dem. Williams*, 162 Ala. 147, 150, 50 South. 123.

Plaintiff's recovery may be rested on the demise either of Morrow or of the Pratt Iron, Coal & Railway Company to plaintiff.

(11) There was no error in the court's ruling excluding the defendant's evidence as to whether witness had heard Mrs. Gilmore "say anything about the death of W. C. Gilmore, or when he died."

To render admissible the declaration of a member of a family as to pedigree, or family history or repute, it must appear that the declarant member of said family is at the time dead, insane, or permanently or indefinitely beyond the jurisdiction of the court. Such predicate was not laid in this case, so as to render admissible the declaration of Mrs. Gilmore as to the death of her husband and the date thereof.—*White v. Strother*, 11 Ala. 720; *Elder v. State*, 124 Ala. 69, 27 South. 305; *Chambers v. Morris*, 159 Ala. 606, 48 South. 687; *Scheidegger v. Terrell*, 149 Ala. 338, 43 South. 26; and the many authorities collected in *Duncan v. Watson, as Trustee, etc.*, 198 Ala., 73 South. 448.

The case is affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.