## KENTUCKY RIVER COAL CORPORATION v. SINGLETON et al.

### No. 11.

District Court, E. D. Kentucky. Jackson.

Jan. 2, 1941.

P. T. Wheeler and C. D. Carpenter, both of Hazard, Ky., for plaintiff.

D. Hollender Hall, of Hindman, Ky., for defendants.

FORD, District Judge.

This litigation involves a dispute as to the title to the minerals under about 55 acres of land in Knott County, Kentucky. The property lies on the waters of a tributary of the Kentucky River known as Big Fork of Lotts Creek.

Statutory sanction for the exercise of federal jurisdiction follows from the showing upon the record that the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000 and is between citizens of different states. 28 U.S.C.A. § 41(1).

Claiming to be the legal and equitable owner and in actual possession of the minerals and mineral products under 62½ acres of land described in the complaint, together with certain mining rights and privileges appurtenant thereto, that it and those under whom it claims have been in continuous adverse possession of the claimed minerals and mineral rights for more than thirty years, that the defendants have recently hindered and interfered with its enjoyment thereof by setting up false and fictitious claims thereto, the plaintiff, Kentucky River Coal Corporation, seeks to have its title quieted and to have the defendants enjoined from further interference.

The defendants dispute plaintiff's claims only as to approximately 55 acres of the described land and assert title in themselves to the minerals underlying that much of it.

It is stipulated that the land in controversy is embraced within the boundary of a 1,500-acre patent issued in the name of Esau Hammons in the year 1846, and that the major portion thereof is also covered by a 300-acre patent issued in the year 1847 to Washington Kelly.

By deed of March 31, 1893, the land described in the junior patent was conveyed by Washington Kelly to Samuel Smith who took possession and, after cultivating a few acres and erecting improvements on the portion now in controversy, sold it to his son, Hiram Smith. No deed was made to Hiram Smith but he was placed in possession of the property by his father and was holding and claiming it in the year 1895 when Delphia Combs, who had acquired title to the Esau Hammons' patent, asserted claim to it by virtue of the seniority of the patent under which she derived title. On July 23, 1895, that controversy over the title was ended by Delphia Combs conveying to Hiram Smith all the lands she owned on Big Fork of Lotts Creek. Hiram Smith thereafter sold the tract now in controversy to his brother-in-law, Joseph Singleton. No deed was made to Singleton but he paid the full purchase price to Smith who surrendered possession and moved to another part of the neighborhood. On December 29, 1905, Joseph Singleton, being then in undisputed possession and claiming title to the property, sold and conveyed the underlying minerals, mining rights and privileges described in the complaint to the Slemp Coal Company. Samuel Smith and wife joined in the deed which was duly recorded on January 31, 1906. By mesne conveyances, this mineral title passed to the plaintiff.

Joseph Singleton remained in possession of the land until 1909, when he sold it to his brother, Monroe Singleton. The deed

from Joseph Singleton to Monroe Singleton was made on March 8, 1910, but he entered into possession and erected improvements on the land about a year before he received the deed. Monroe Singleton remained in continuous and uninterrupted possession of the property and used and cultivated the surface until February 4, 1937, when he conveyed it to the defendants, his sons, Ezekiel and Ellis Singleton, and his daughter-in-law, Katie Singleton.

The testimony is convincing that at the time he purchased the property from his brother and entered into possession, Monroe Singleton was fully aware of the fact that the Slemp Coal Company had previously acquired title to the minerals from the same source and that this fact was likewise known to the defendants long before the property was conveyed to them by their father.

Approximately a year after Monroe Singleton had entered into possession of the property and while he held it under his purchase from his brother, he procured a quitclaim deed from Hiram Smith obviously designed to cure any defect in his title on account of Hiram Smith having failed to execute and deliver a deed in consummation of his sale to Joseph Singleton.

A short time before the institution of this action (May 29, 1940), the plaintiff, through its lessee, Hardy Burlingham Mining Company, began preparations to mine and remove coal from the land in controversy. The defendants thereupon notified plaintiff's lessee not to enter upon the property and then, for the first time, openly asserted title to the minerals.

The defendants rest their claim to the mineral title upon the senior Esau Hammons patent by virtue of the quitclaim deed procured by their father and grantor, Monroe Singleton, from Hiram Smith to whom, as stated, the Esau Hammons title was conveyed by Delphia Combs. They also assert title by adverse possession upon the part of themselves and their father for the statutory period.

[redacted] Section 2366a-1 of the Kentucky Statutes (Acts of 1906, c. 7, p. 18) provides that whenever the mineral rights in or appurtenant to lands in this Commonwealth shall have heretofore passed or shall hereafter pass "from a claimant in possession of the surface of said land, the continuity of the possession of such mineral, interests and rights shall not be deemed thereby to have been, or to be, broken; but the possession of the surface by the original claimant thereof, from whom such mineral, interests or rights passed, or by those claiming through or under him, * * * shall be deemed to have been, and hereafter to be, the possession of such mineral, interests and rights in said land for the benefit of said person, his heirs and assigns, to whom said mineral, interests or rights have or shall have passed as aforesaid."

Under this statute, the Kentucky authorities are unanimous in holding that after severance of the mineral title one who acquires possession of the surface from the same grantor is deemed to hold possession of the minerals as trustee for the holder of the mineral title and, in the absence of an explicit disclaimer and clear repudiation of this subsisting relationship in a manner sufficiently open and notorious to bring home to the mineral owner knowledge or notice of the hostility of the surface holder's possession, the surface holder, being a trustee in possession, can never acquire the title of his cestui que trust by any length of possession for his possession never becomes adverse. The possession of the mineral owner being thus preserved and protected by the statute is not lost nor its continuity interrupted by any length of non-user. Farnsworth v. Barret, 146 Ky. 556, 142 S.W. 1049; Scott v. Laws, 185 Ky. 440, 215 S.W. 81, 13 A.L.R. 369; McPherson v. Thompson, 203 Ky. 35, 38, 261 S.W. 853; Franklin Fluorspar Co. v. Hosick, 239 Ky. 454, 39 S.W.2d 665; Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394; Harkins v. Keith, 267 Ky. 353, 102 S.W.2d 5; and Curtis-Jordan Oil & Gas Co. v. Mullins, 269 Ky. 514, 106 S.W.2d 979.

[redacted] The record discloses nothing which broke the continuity of plaintiff's possession held and preserved through its statutory trustee. The mere recordation of the quitclaim deed relied upon was not effective for that purpose. "Disseisin * * * cannot be accomplished by recording deeds." Smith v. Graf, 259 Ky. 456, 465, 82 S.W.2d 461, 466; Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394; Harkins v. Keith, 267 Ky. 353, 102 S.W.2d 5.

The plaintiff's continuous adverse possession of the minerals in controversy, having subsisted far beyond the statutory pe-

riod, ripened into an unassailable title. The claim asserted by the defendants must be denied and the plaintiff adjudged the relief for which it prays.

Attorneys for the plaintiff will prepare and serve upon defendants findings of facts, conclusions of law and judgment in conformity herewith, and submit the same for entry.