20 So.2d 777

**ANDERSON v. DOE ex dem. MACEDONIA BAPTIST CHURCH.**

7 Div. 776.

Supreme Court of Alabama.

Feb. 1, 1945.

Rains & Rains and Roberts, Cunningham & Hawkins, all of Gadsden, for appellant.

Hood, Inzer, Martin & Suttle, of Gadsden, for appellee.

THOMAS, Justice.

The suit is by the Macedonia Baptist Church for its lot of land in the vicinity of the church. The suit was a common law action of ejectment. The demise was laid in different counts of the complaint, in the several lessors. In such action at law, if the defendant pleaded not guilty of the matters alleged, this would be the equivalent of the consent rule, which requires the defendant as a condition to controverting the lessor's title, to admit the truth of the "fictitious averment of lease entry and ouster." Doe ex dem. Slaughter et al. v. Roe ex dem. W. M. Carney Mill Co., 221 Ala. 121, 127 So. 671. See also Perolio et al. v. Woodward Iron Co., 197 Ala. 560, 73 So. 197.

Due notice from Richard Roe issued to one G. R. Anderson, appellant here, to the effect that:

"I am informed that you are in possession of or claim title to, the premises in this declaration described, or to some part of it, and I being sued in this action as a casual ejector only, and having no claim or title to the same, do advise you to appear at the next term of the Circuit Court of the State of Alabama to be holden for Etowah County, at the place of holding the same, by either yourself or by some attorney of that court and then and there by rule of said court to cause yourself to be made defendant in my stead; otherwise, I shall suffer judgment therein to be entered against me by default and you will be turned out of possession. This August 20, 1942."

The defendant demurred to the complaint in words as follows: "For that said complaint does not state a cause of action. Rains & Rains, Attorneys for Defendant. Filed Oct. 14, 1942."

Thereafter the defendant moved for a transfer to equity and demurrer thereto was overruled. By virtue of a court order the cause was transferred from the law docket to the equity docket and in compliance with the provisions of the law, defendant filed his bill of complaint "against the Plaintiffs, John Doe, ex dem. The Macedonia Baptist Church, and respectfully showeth unto your Honors as follows:" (The source of his title). The source of title will be set out in the statement of facts.

To this answer were directed many grounds of demurrer. It is recited in the motion and order of transfer that G. R. Anderson filed a pleading in the cause on December 18, 1942, in which he styled himself as the defendant and John Doe, ex dem. The Macedonia Baptist Church, a corporation, as plaintiff. The cause was set by agreement for taking of testimony before the register and due notice issued to that effect that the said Anderson would assume the roll of complainant in equity and have the duty of first offering proof of his asserted equitable defense, but "the attorneys for said G. R. Anderson have advised the attorneys for John Doe, ex dem. The Macedonia Baptist Church, a corporation, that they will not assume the initiative in offering proof as the law does not require them to do so."

The court entered an order, "directing that G. R. Anderson shall be considered as the complainant in equity court in this proceeding," and further "directed (him) to assume the initiative in offering evidence on the date indicated, which has been agreed to as the date for taking evidence in the cause."

The effect of G. R. Anderson's testimony was that he was the defendant in the original suit involving the property in question; that he took possession of the same under a tax deed, which is set out; that the property consisting of about twenty acres as described was removed from the highway; that his possession was around two years; and he made ready ten acres of the land for the plow and put about

four and one-half acres in cultivation. He further stated that he paid the required amounts to the several state and county officials and that Mr. E. D. Jordan of the State Tax Department issued to him a receipt therefor dated 2/24/1941; that he paid the several amounts to redeem the land from the state tax sale, and he also received a receipt from John C. Curry, State Land Commissioner for the amount sent to Mr. E. D. Jordan of $27.17, advising him that since the application to purchase had been received additional interest had accrued in amount of $.35, and that the property so purchased by him was indicated in Mr. Curry's letter as:

"Re: C/X #41—8/2/38—Property Assessed to Unknown Owner No. 2."

On March 8, 1941, plaintiff's Exhibit "D" shows that the State Land Commissioner, by J. T. Carlton, sent G. R. Anderson, Route 3, Gadsden, Alabama, the following letter:

"I enclose Certificate of Sale #41 listing property which sold to the State for Taxes in Etowah County on August 2, 1938, assessed to Unknown Owner No. 2. This certificate has been properly assigned by endorsement to you."

The record recites the offer in evidence of plaintiff's Exhibit "E," the "book of Town Plats A, showing the John V. Coe subdivision, in the Office of the Judge of Probate of Etowah County and more particularly that part of said map or plat which refers to Lot 3 in said John V. Coe Subdivision on Page 362, Book of Town Plats 'A.'"

The witness was then asked if he knew of a negro church by the name of Macedonia Baptist Church in that community and said there was "no such negro church." That the negroes owned no property adjoining to the lot in question, which is supposed to be twenty acres, and which is located "quite a piece to where the negroes live." He fixed the value of the property at $250 without improvements. That his residence was something like a mile and a quarter from the property in question. That he was claiming title to the property in question by reason of this tax deed which had theretofore been exhibited in evidence; that when he took possession of the property there was evidence of the fact that others had been cutting timber therefrom—he understood some Lawler, a colored person, a member of the Macedonia Baptist Church cut timber therefrom for "heading timber." That he paid taxes on the land for the years 1941 and 1942; he never knew that the land had been used for "church purposes." The witness was then asked: "Has any of it been used for negro burial ground" and he answered: "No sir."

The witness Luther Garrett testified he knew the land that Mr. Anderson got under the tax sale, described its location, and stated that prior to the time Anderson started clearing the land there were some colored people came out and cut some timber off of it. That this was several years before Anderson took possession; that no church had been located on the property nor was there an effort by the negro church to build in that locality. He fixed the value of the land and its reasonable rental price. On cross examination he stated that colored people came there, cut wood and hauled it by his place. That they did such cutting there and hauling two or three years. That theretofore the land had been "just lying idle." That the colored people never did work it and that his knowledge extended over a period of six or seven years.

The witness Frank McCoy testified that he had been living up there since 1916; knew the land and said a group of negroes were to locate a negro church up there; that the white people filed a petition with the Board of Revenue objecting and that it "has not since been used for church purposes." He fixed the value of the land at $10 per acre. On cross-examination he stated he did not remember cutting from the place "out there in the last ten years."

The witness J. M. Hooks testified he knew the land before and at the time Anderson got his tax deed; that within that time he did not know that the property had been put to any church use of any kind. This witness was asked:

"Q. At the time this was bought by these colored people was—did they come to see you with reference to putting a church up there? (Obj.) A. Yes, sir, church or old folks home, something of the sort.

"Q. Is there any negro churches in that particular locality? A. Not one. No colored people in there at all.

"Q. Was there or not an objection or protest made to using that land for a colored church? (Obj.) A. Yes, sir. I hadn't signed it but I knew about it. There was no road in that locality and these

negroes had bought this property from Pete Barnett—"

The witness further testified that the negroes were talking about building a church and wanted a road there by the lake and this he declined to accede to. That—

"A. One of the darkies said 'Mr. Hooks, we was told to come to you and see what you said about building over there'. I said 'I would advise you not to go any further with it.'

"Q. Did they say whether they would build or let it go? A. They never said nothing. I didn't hear much more about it. They didn't come and build. They come over there and cut some wood.

"Q. What kind of wood was it? A. Little pine saplings."

The tax records of the county were exhibited showing G. R. Anderson's assessments and payments of taxes for the years 1941 and 1942.

Exhibit H of the delinquent tax docket of real estate of said county showing the assessment to "Owner Unknown #2 of Vacant lot No. 3, John V. Coe Sub-division. Same for 1932, 1933, 1935, 1936, 1936." Said exhibit also shows the report to the probate judge of the tax collector of default in the payment of taxes for the year 1938 touching this property and the order of the Judge of Probate for the as-

"The State of Alabama, Etowah County. Probate Court......Term......19—.

"It appearing to the satisfaction of the Court that the Tax Collector did on the 2 day of Aug. 1938, make the sale, ordered, adjudged and decreed in this cause and that State became the purchaser at said sale. The property sold for the sum of Seventeen 90/100 Dollars. And it appearing to the satisfaction of the Court that the Tax Collector within ten days thereafter did make a report of said sale to this Court and prayed confirmation thereof, and that said report did lie over for a period of five days for exceptions or objections thereto and that upon the expiration of said five days no objections were filed thereto. And it further appearing to the satisfaction of the Court that the Tax Collector sold said real estate in accordance with the law, and the decree of this Court ordering such sale.

"It is therefore, ordered, adjudged and decreed that said sale be and is hereby confirmed and the Tax Collector or Probate Judge be and he is hereby ordered to issue proper certificates of purchase to the purchaser.

"Done this the 8 day of Aug. 1938.
"E. L. Hurst, Judge of Probate."

And the record further shows of "Record of Tax Sales and Redemptions Etowah County, Alabama," as follows:

| "Unknown Owner #2 Date of Sale 8–2–38 To Whom Sold State Amount Paid $17.90 | The real estate sold is described on reverse side of this sheet, said described property being the same property sold under a decree of the Probate Court dated the 7 day of June, 1938, said description being hereby adopted and made a part hereof, the same as if written herein. Certificate of sale transferred by the State to G. R. Anderson, March 10, 1941, E. L. Hurst, #137. This May 1, 1941 E. L. Hurst, Judge of Probate.
E. L. Hurst, Judge of Probate." |
|---|---|

"By Whom Redeemed.
"Date Redeemed
"Deed issued to G. R. Anderson. This Aug. 5, 1941
"E. L. Hurst, Judge of Probate."

sessment of the property to Owner Unknown in the amount of $14.36 for the year 1937, and order of sale thereof, and that of the tax collector that after due notice on August 2, 1938, did in accordance with the law sell the land at public outcry and that the same was purchased by the State for the sum of $17.90. The probate judge's order that the report of the tax collector lie over for a period of five days for exceptions and objections; that:

The complainant Anderson being recalled as a witness testified that he first learned the Macedonia Baptist Church was clearing the property in question in 1937 or 1938. There were due submissions on evidence and exhibits on September 16, 1943, and the decree was, as indicated in the record, for respondent for the tract of land, for reimbursement of G. R. Anderson for taxes paid as indicated, and that G. R. Anderson deliver possession of the

said land to the Macedonia Baptist Church or its duly authorized agent, taxing said Anderson with all of the costs in this proceeding.

 Churches, cemeteries and lands used exclusively for religious purposes or for purposes purely charitable are exempt from taxation. Constitution 1901, § 91. The many decisions of this court are to the effect that *use not ownership determines the exemption.* Skinner's Constitution 1901, pp. 441-444, § 91; Code 1940, Art. 4, § 91, p. 130. The evidence before us shows no such use during the time the land was assessed for taxes to "owner unknown." Nor was there such corporation in existence, subjecting the land to use for purely religious or charitable purposes. To this effect are—Anniston City Land Co. v. State, 160 Ala. 253, 48 So. 659; State v. Alabama Educational Foundation, 231 Ala. 11, 14, 163 So. 527; State v. Church of the Advent, 208 Ala. 632, 95 So. 3; State Tax Commission et al. v. Commercial Realty Co., 236 Ala. 358, 182 So. 31.

The record and exhibits in this case are not in accord with the requirements of the statute in respects to be indicated. General Acts of Alabama 1935, p. 256, § 2; Code 1940, Tit. 51, § 249. In the last cited section of the code, it is stated that: "The probate court of each county is empowered to order the sale of lands therein for the payment of taxes assessed on such lands, or against the owners thereof, *when the tax collector shall report to the court that he was unable to collect the taxes assessed against such land,* or any mineral, timber, or water right or special right, or easement therein, *or the owner thereof,* without a sale of such land." [Italics supplied.] See Chandler v. Price, 244 Ala. 667, 15 So.2d 462.

 The power of the probate court in the sale of land for collection of unpaid taxes is not in the exercise of its general jurisdiction but that of a special or limited jurisdiction (State v. Denson, 242 Ala. 177, 5 So.2d 729), and to support its action in this case, the records of the court may be looked to and must affirmatively show jurisdiction in the exercise of the power of sale. Town of Flat Creek v. Alabama By-Products Corp. et al., 245 Ala. 528, 17 So.2d 771, collecting the decisions on jurisdiction, and Messer v. City of Birmingham,

243 Ala. 520, 10 So.2d 760; Boyd v. Garrison, Ala.Sup., 19 So.2d 385,[1] as to invoking jurisdiction for sale of land for nonpayment of taxes.

 The instant record shows on its face that the tax collector did not discharge his duty in respect to such required report. The case of Lodge v. Wilkerson, 174 Ala. 133, 56 So. 994, is cited to a contrary effect. It was not so construed in Messer v. City of Birmingham, supra; Grayson v. Schwab, 235 Ala. 398, 179 So. 377. In the last cited case the recitals of a deed are held not evidence of historical facts there stated unless made so by statute. There is no provision in the revenue law to that effect.

The judgment of the circuit court is affirmed.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.