301 So.2d 51

**W. G. NELSON and Florence S. Nelson**

v.

**J. W. TEAL, Jr., et al.**

**SC 661.**

Supreme Court of Alabama.

Aug. 15, 1974.

Rehearing Denied Sept. 12, 1974.

James E. Hart, Jr., Brewton, for appellants.

174

Caffey & Owens, Brewton, for appellees.

PER CURIAM.

How does a purchaser at a tax sale of a mineral estate go into "possession" of the minerals? That is the question presented by this appeal.

Appellant, W. G. Nelson, purchased an undivided one-half interest in the oil, gas, and other minerals in property located in Escambia County on 7 June 1952. Subsequently, Nelson sold all of his interest in the minerals except a ½₄ interest which is the subject matter of this litigation.

Nelson failed to pay his 1964 taxes on the mineral interest. Consequently, his mineral interest was sold for taxes to J. W. Teal, Jr. on 27 May 1965. Teal received a certificate of purchase. Three years later, on 28 May 1968, Teal received a tax deed from the Probate Judge of Escambia County.

Nelson filed this action against Teal and Teal's successors in interest on 13 June 1972. In the action Nelson sought to redeem the mineral estate and to have Teal's tax deed removed as a cloud on his title. The trial court, after hearing testimony, found, in part:

"The court is of the opinion that the respondent, J. W. Teal, Jr., acquired the

title to the mineral interest involved in this case when he received a tax deed on May 28, 1968, pursuant to his purchase of the same at a tax sale on April 19, 1965. The court is of the opinion that to hold otherwise would be to excuse the owner of a severed mineral interest from the same tax liability as the owner of the surface. The only way to possess a mineral interest, aside from the assessment and payment of taxes, is the attempt to excavate the minerals or lease them to another for that purpose. It is common knowledge that no one is going to invest the required capital for the excavation of minerals in the absence of a legal title to the same and that during the three year period in which a tax deed can not be executed, it is impossible for a purchaser at a tax sale to exercise any possession except the assessment and payment of taxes."

We affirm.

 Mineral interests in land are considered to be "real estate." Locke v. Locke, 291 Ala. 344, 280 So.2d 773 (1973). When severed, these interests may be taxed. Title 51, § 21, Code of Alabama, 1940.[1] If the taxes are not paid, the probate court can order a sale for the payment of the taxes. Title 51, § 249, Code of Alabama, 1940. The purchaser at a tax sale is entitled to get a tax deed after the expiration of three years from the date of the sale. But an owner whose property is sold for taxes is not completely foreclosed. He can file an action to recover his property as Nelson did here. One limitation is that he must begin his suit within *three years from the date when the purchaser became entitled to demand a deed.* Title

51, § 295, Code of Alabama, 1940, which provides, in part:

"No action for the recovery of real estate sold for the payment of taxes shall lie unless the same is brought within three years from the date when the purchaser became entitled to demand a deed therefor. . . ."

 Nelson argues that the three-year statute did not begin to run until Teal was in *adverse possession* of the mineral interest and had become entitled to a deed to it from the probate judge. There is ample authority to support Nelson's argument in cases involving tax sales of interests other than a severed mineral interest. See Bell v. Pritchard, 273 Ala. 289, 139 So.2d 596 (1962); Odom v. Averett, 248 Ala. 289, 27 So.2d 479 (1946). Nelson claims the same rule must be applied to tax sales of a severed mineral estate. We disagree.

Unquestionably, Teal was not in *adverse possession* of the minerals. Hooper v. Bankhead & Bankhead, 171 Ala. 626, 54 So. 549 (1911). He never drilled a well or otherwise appropriated the minerals. The question, however, is whether Teal, as purchaser at the tax sale, had to actually possess the minerals. This question has never been answered in Alabama. We now hold that actual possession is not required.

What did Teal do in this case to cause us to hold that Teal did not have to adversely possess the minerals and that Nelson's suit to recover his interest was barred? Teal testified that he "did everything in [his] means" to show he was taking possession. We now set out some of the things which the record shows that Teal did. In 1965, shortly after he receiv-

1. "The subjects of taxation, except as exempted by law, shall be as follows: (a) Every piece, parcel, tract or lot of land in this state, including therein all things pertaining to such land, and all structures and other things so annexed or attached thereto as to pass to a vendee by conveyance of such land; and *every separate or special inter-* *est in any land, such as mineral, the right to mine minerals; timber, and the right to turpentine; oil or petroleum, natural gas and the right to remove same from the soil, or any other interests when such interests are owned by persons other than the owner of the surface or soil, except growing crops."* (Emphasis added.)

ed his certificate from the probate judge, Teal consulted an attorney. The attorney told Teal to inform Nelson of the tax sale and to advise Nelson of his purchase. Teal did this by writing a letter to Nelson. On 28 May 1968, Teal got a tax deed from the probate judge. He then wrote to Nelson, advising Nelson that he "had a deed and . . . was going to take possession."

On 21 September 1968, Teal executed an oil, gas and mineral lease on the interest he claimed by reason of his tax deed. In 1971, Teal again advised Nelson by certified mail of his continuing claim to the mineral interest by reason of his purchase at the tax sale. Teal also executed two instruments styled "Transfer of Royalty and Mineral Interests" conveying his interest to third parties. One of these instruments was dated 12 February 1972, the other 25 May 1972.

Nelson never responded to any of Teal's letters, but he did file this suit on 13 June 1972. Were Teal's acts sufficiently adverse to make the short statute of limitation applicable? We think so.

Teal not only had a right to demand a deed—he had a deed, which was valid upon its face. It constituted color of title to the mineral estate described in it. See McCay v. Parks, 201 Ala. 647, 79 So. 119 (1918). The effect of Teal's tax deed was to vest in him the title to the mineral estate, subject to Nelson's redemption rights. We hold that Teal's acts were sufficient to start the running of the three-year short statute of limitations. Consequently, Nelson's suit was not filed in time.

The judgment of the trial court is affirmed.

Affirmed.

MERRILL, HARWOOD, BLOODWORTH, MADDOX and McCALL, JJ., concur.

FAULKNER, J., dissents.

FAULKNER, Justice (dissenting).

I respectfully dissent from the majority opinion in this case.

Since mineral interests in property are governed by the rules relating to real property (Sanford v. Alabama Power Company, 256 Ala. 280, 54 So.2d 562 [1951]), the statute would not begin to run until Teal was in adverse possession of the mineral interest and entitled to demand a deed therefor. Bell v. Pritchard, 273 Ala. 289, 139 So.2d 596 (1962). Was he in adverse possession of the minerals? The answer is no. In Hooper v. Bankhead & Bankhead, 171 Ala. 626, 54 So. 549 (1911), this court said, " 'Such a possession (adverse) must be actual, notorious, exclusive, continuous, peaceable and hostile for the statutory period.' " In applying this rule to a solid mineral (coal) the court further said, " 'Actual possession is taken by the opening of mines and carrying on of mining operations. That possession is continuous if the operations are continuous, or are carried on continuously at such seasons as the nature of the business and the customs of the country permit or required. A cessation of operations in accordance with the custom of the neighborhood, or from necessity occasioned by some natural agency, would not be an interruption of the possession. But there must be something evidencing possession in the interval which connects the operations when resumed with those which have gone before, and to distinguish such possession from a series of repeated acts of trespass.' " This language was cited in Pollard v. Simpson, 240 Ala. 401, 199 So. 560 (1941). In *Pollard,* this court held that to effect adverse possession of minerals after severance of title from the surface, the adverse claimant must do some act or acts evincing a permanency of occupation and use, as distinguished from acts merely occasional desultory or temporary—acts suitable to the en-

joyment and appropriation of the minerals so claimed and hostile to the rights of the owner. These decisions have been on the question of adverse possession of solid minerals and the effect of them is, that for possession of a solid mineral as would mature a limitation title thereto, there must be a penetration, or the working of the minerals must be continuous as well as exclusive. Until today this court has not ruled on adverse possession of a mineral such as oil and gas. However, in jurisdictions which have considered the question, I find that acts less than actual penetration of the oil and gas reservoir will not constitute adverse possession of a severed gas and oil interest. Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394 (1934); Kentucky River Coal Corp. v. Singleton, 36 F.Supp. 123 (E.D.Ky., 1941); Lyles v. Dodge, 228 S.W. 316 (Tex.Civ.App., 1921); Smith v. Graf, 259 Ky. 456, 82 S. W.2d 461 (1935); Viersen v. Beettcher, 387 P.2d 133 (Okl., 1963). The reason for protecting the owner of a severed mineral lease is that the mineral owner has no legally protected interest in the surface separate and apart from those rights incident to the removal of the minerals. He cannot ignore any occupation of the surface, as no cause of action can accrue to him because another is occupying the surface. Cf. 1 Williams & Meyers, Oil and Gas Law, § 224.1 and 1 Kuntz, Oil and Gas, § 10.4.

Under the adverse possession theory of the case, I would hold that to constitute adverse possession of a mineral interest in oil and gas, there must be an actual and continuous penetration of the oil and gas reservoir for the statutory period by the adverse claimant. As the court said in Piney Oil & Gas Co., supra, "Adverse possession means adverse occupation and user which must be wrought on the property in question. It cannot be wrought in the office of the county clerk no matter how many deeds or leases the would-be disseizor may record there."

I see no reason why a distinction should be made between solid minerals and oil as the majority has done here. We now have three rules pertaining to redemption from a sale for taxes—one rule for surface rights, one for solid minerals, and one for oil and gas. I do not know the rule the majority would apply to redemption of water rights—say, on a lake or large pond. Could the disseizor get by with assessment and a letter or would he have to launch a destroyer, float a bath tub, or use a dipper?

Although the issue of the validity of the tax deed was not raised, it appears to me the tax deed was void. One of the recitals in the deed says that the decree of the Probate Court ordering the sale was at the April 19, 1965, term. The tax collector gave 30 days notice in the *Brewton Standard*. The land was sold on May 27, 1965. In total time the taxpayer was entitled to 40 days notice—10 days under § 258, Title 51, Code of Alabama, and 30 days under § 259. From April 19 to May 27 is 38 days. See Reuter v. Mobile Building and Construction Trades Council, 274 Ala. 614, 150 So.2d 699 (1963). To support the Probate Court's order selling the land, the court records must affirmatively show jurisdiction to sell. Anderson v. Doe, 246 Ala. 398, 20 So.2d 777 (1945). Even though § 277, Title 51 provides that recitals are prima facie evidence of the regularity of all proceedings, the jurisdictional issue here stands out like a sore thumb.

I would reverse.

### ON REHEARING

Chief Justice HOWELL HEFLIN and Justice RICHARD JONES wish to be shown as concurring in Justice FAULKNER'S dissent.

The opinion is extended to show these changes.

Application for rehearing is overruled.