The single issue before the Court on this appeal is whether the trial court erred in finding that the appellants failed to establish their claim of title to the minerals in question without actual possession of the minerals. We affirm the trial court's ruling.
The appellants in this case, plaintiffs below, are all heirs of Mrs. C.J. Downey. On May 20, 1961, Mrs. Downey purchased at a tax sale the severed mineral rights to 82 acres of land in Jackson County, Alabama. Following the tax sale and each year thereafter to the present, Mrs. Downey and her successors in title assessed and paid the taxes on the separate mineral estate. She received her tax deed three years after the tax sale and promptly recorded the deed. As stipulated between the parties at the trial, none of the appellants nor their predecessor in claim of title ever mined or removed any coal or conducted any mining operation on any part of the land. It was stipulated, however, that from 1966 until appellee began mining operations, Leon Downey, son of Mrs. C.J. Downey and agent for the other appellants, did go on the property numerous times to ascertain if anyone was attempting to disturb the minerals.
The exact date appellee commenced mining operations on the property is not clear from the facts furnished the Court. Although Leon Downey notified appellees that appellants claimed mineral and mining rights under the land at the time they began their mining operations, appellees have continued mining, predicating their claim to the mineral rights on a deed to the surface rights of the property and the fact that the tax deed to the mineral rights received by Mrs. Downey in 1964 was void. Appellants *Page 69 
base their claim to the mineral rights on an adverse possession claim because the tax deed, as determined by the trial court, was defective and therefore ineffective to pass title. The trial court ruled that because there was no color of title accompanied by an adverse possession that was actual, notorious, exclusive, continuous and hostile for the statutory period of ten years, appellants' request for relief must be denied.
In reviewing the ruling of the trial court in this case, the Court must decide whether mineral rights that have been severed in title from the surface can be adversely possessed without opening mines and carrying on mining operations. Because of the supposed infirmities of the tax deed for the mineral interests received by Mrs. Downey in May of 1964, appellants, as successors in interest, contend that their title to the mineral estate of this land has been perfected by statutory adverse possession under the terms of Alabama Code § 6-5-200 (1975), which reads:
 "(a) Adverse possession cannot confer or defeat title to land unless:
 "(1) The party setting it up shall show that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for 10 years before the commencement of the action;
 "(2) He and those through whom he claims shall have annually listed the land for taxation in the proper county for 10 years prior to the commencement of the action if the land is subject to taxation; or
 "(3) He derives title by descent cast or devise from a predecessor in the title who was in possession of the land.
 "(b) If the period during which the party's deed or color of title has been on record, added to the time during which the deeds or color of title of those through whom he claims have been on record, amounts to 10 years, he may defend or prosecute on his adverse possession, and an inadvertent failure to list the land for taxation, any unintentional mistake in the description of the assessment or unintentional omission of any part of it from the assessment during the period of 10 years shall not bar the party of his action or defense on his adverse possession.
 "(c) This section shall not be construed to affect in any way a title perfect by adverse possession before the adoption of this Code, nor to deprive any person of his rights under sections 6-6-286 through 6-6-289, nor to affect cases involving a question as to boundaries between coterminous owners."
With regard to statutory adverse possession, this Court has stated the following:
 "In Alabama there are basically two types of adverse possession, these two types being statutory adverse possession and adverse possession by prescription. Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years. See, Fitts v. Alexander, 277 Ala. 372, 170 So.2d 808 (1965). Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. Code 1975, § 6-5-200. See, Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962)."
Kerlin v. Tensaw Land Timber Co., 390 So.2d 616, 618 (Ala. 1980).
Although appellants, as stipulated, admit that they have never attempted to remove any coal from this property, they rely substantially on the Court's decision in Nelson v. Teal,293 Ala. 173, 301 So.2d 51 (1974).
In Nelson v. Teal, which dealt with the three-year statute of limitations on actions by record owners to recover land sold for payment of taxes and involved oil as opposed to hard minerals, this Court held that an action by record title holder to redeem mineral rights from a tax sale was barred *Page 70 
after the requisite period even though the purchaser had not drilled any wells or otherwise possessed the minerals. We reached this result because the tax purchaser had effectively brought notice to the record owner of his purchase and his intent to take possession of the mineral rights. Notification was given on three separate occasions, in 1965, 1968 and 1971 by the tax purchasers and the record owner took no action to redeem until 1972. 293 Ala. at 175-176, 301 So.2d 52-53.
In the instant case, there is no claim that the Downeys ever gave, or attempted to give, notice to the record titleholder of the mineral rights included here. Although the appellants assert that the prior owner of the minerals, Mr. L.B. Mays, died in 1953, and that they had no practical way of making their claim known to any heir or remainderman, because no last will or testament was ever probated in this state, the tax record does indicate, however, that the mineral rights in question were assessed in the name of "L.B. Mays, c/o M.L. Gilliam, Rt. # 3, Scottsboro, Ala." Appellants offer no explanation why they made no effort to contact the heirs or devisees of Mr. Mays through M.L. Gilliam. The only actual notice of appellants' claim given to anyone occurred at the time the appellees began mining the minerals.
The appropriate rule for the Court to apply in this instance appears in the case of Hooper v. Bankhead Bankhead, 171 Ala. 626,54 So. 549 (1911). The rule adopted by the Court in Hooper
reads as follows:
 "What will constitute adverse possession of minerals, severed, in title, from the soil?
 "Barringer Adams on Mines, at pages 568, 569, say: `Such a possession (adverse) must be actual, notorious, exclusive, continuous, peaceable and hostile for the statutory period. And in these respects the surface owner is in no better position than a stranger. * * * Actual possession is taken by the opening of mines and carrying on of mining operations. That possession is continuous if the operations are continuous or are carried on continuously at such seasons as the nature of the business and the customs of the country permit or required. A cessation of operations in accordance with the custom of the neighborhood, or from necessity occasioned by some natural agency, would not be an interruption of the possession. But there must be something evidencing possession in the interval which connects the operations when resumed with those which have gone before and to distinguish such possession from a series of repeated acts of trespass.'
 "To the same effect is White on Mines, §§ 430, 431, 432, 433.
 "Under the authorities, it is essential to effect adverse possession of minerals, after severance, in title, from the surface, that the adverse claimant do some act or acts evincing a permanency of occupation and use, as distinguished from acts merely occasional, desultory, or temporary — acts suitable to the enjoyment and appropriation of the mineral so claimed, and hostile to the rights of the owner. Warvelle,. § 420; 1 Cyc. pp. 983, 985, 994, 995; Newman v. Newman, [60 W. Va. 371, 55 S.E. 377] supra; Eureka Co. v. Norment, 104 Ala. 625, 16 So. 579; Alexander v. Savage, 90 Ala. 383, 8 So. 93; Elyton Co. v. Denny, 108 Ala. 553, 18 So. 561; Jackson Lumber Co. v. McCreary, 137 Ala. 282, 34 So. 850; Washington v. Norwood, 128 Ala. 390, 30 So. 405."
171 Ala. at 634-635, 54 So. at 551. See Sanford v. AlabamaPower Co., 256 Ala. 280, 288, 54 So.2d 562 (1951); Thomason v.Mullinax, 403 So.2d 883, 886 (Ala. 1981). Since there was never any actual taking of coal by appellants for the necessary period, there can be no adverse possession. Even though appellants paid taxes on the severed mineral estate for the requisite period and arguably had color of title, the possession must be, in addition to exclusive, open, notorious and hostile, actual. Kerlin v. Tensaw Land Timber Co., supra.
Actual possession of the coal in this instance could have been manifested either by mining, excavating or some other means of removal. Appellant Downey's occasional foray onto *Page 71 
the land to monitor any attempts by others to remove coal from the land was insufficient to constitute actual possession of the coal beneath the surface.
Therefore, the trial judge's ruling that the elements of adverse possession were not satisfied, as based on these facts, is neither palpably erroneous nor manifestly unjust, and is accordingly due to be affirmed. Thomason v. Mullinax,403 So.2d 883, 884 (Ala. 1981).
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.