## Howard v. Howard.

April 20, 1945.

James Sampson and J. K. Beasley for appellant.

J. B. Carter and Astor Hogg for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE TILFORD— Reversing.

This is an appeal from a judgment of the Circuit Court setting aside a judgment of the County Court appointing appellant statutory guardian of her three step-daughters aged respectively 12, 14, and 9 years. The reasons given by the Circuit Judge for reversing the finding of the County Judge that appellant was the proper person to be appointed are that appellant's reputation for morals is "under attack in this record," and that her property interests are antagonistic to those of the infants. Little more than a summary of the facts will suffice to show our reasons for disagreeing with his conclusion.

E. M. (Zeke) Howard, the father of the children, was killed by one Eddie Philpot on the night of December 25, 1943. His first wife, the mother of the children, died in 1936, and in January, 1938, he married appellant who was then 22 years of age and employed at the Indian Rock Cafe in the outskirts of Middlesboro. In December, 1938, he was convicted of buying and selling "C C C Clothes" and sent to the penitentiary where he remained for eighteen months. During his confinement appellant operated his grocery and liquor store, and converted the $87 which he had left her into a profit of several thousand dollars. This money she used in improving the property, erecting new buildings, and converting the house in which they had lived into an attractive home equipped with running water, new furniture, and all necessary conveniences. Thereafter she retired from the liquor business and established a bus line, operating seven or more busses, from which, apparently she has derived a substantial income. But even more remarkable than these accomplishments were the benefits bestowed by her upon the children. Had they been her own flesh and blood, and had her means been unlimited, she could not have done more, if the testimony of the family physician, the minister, the local leader of the Girl Scouts, peace officers, numerous neighbors, and the sister of the deceased mother of the children, is to be believed. Describing the conditions existing in Zeke's home at the time of his first wife's death, this last-mentioned witness, who came from her home in Illinois to testify in behalf of appellant, stated that "it was nothing but a hog pen." Asked as to the present condition of the home she answered "I didn't recognize it. It is a home now." The children attend school and Sunday

school. They are members of the B. Y. P. U., the 4-H Club, and of the Girl Scouts whose camp they visit during vacations. They play on the High School Band, have a pony, swimming pool, and bicycles; and their love and gratitude to appellant for her care and devotion was manifest in their testimony. Appellant has no children of her own but that those supplied by fortune awakened in her a fully developed maternal love could not be doubted by anyone who dispassionately reads this record.

Such a reading of the record will also dispose of the charges against appellant's moral character. True, a few witnesses testified that her reputation was bad, but a greater number, more free of partisanship and of better standing, testified that it was good. Those who disparaged it apparently based their conclusions upon the fact that appellant had been employed in a cafe at the time of her marriage; that she had visited Zeke's home after his first wife's death; and that since Zeke's death she had been seen frequently in the company of a State Highway Patrolman. But, according to her testimony and that of the officer himself, her association with him was on trips to Middlesboro in company with her father for the purpose of interviewing witnesses who would testify as to the circumstances under which her husband had been killed, in order that his slayer might be indicted and brought to trial. Nothing is shown that would indicate that either the Indian Rock Cafe or the store which appellant conducted during her husband's confinement in the penitentiary bore an unsavory reputation. Moreover, her employment at the Indian Rock Cafe lasted only a month and a half. She freely admitted that she had visited Zeke's home before their marriage, but denied that her relations with him had been improper.

Zeke died intestate and was survived by his father and mother who, because of their age, declined to seek appointment as the children's guardian. The appellee, Hamp Howard, is Zeke's brother, and his reason for seeking the appointment, which the County Judge denied, is, in his own language, as follows:

"A. At first I was aiming for Ethel (appellant) to be appointed, and I came to Harlan to see about some deeds, to release a deed, I believe, and in looking it up

I found where they had put this deed on record twice, that is, for the property I sold to Zeke, and it was so fresh I knew I made it to Zeke and Ethel's name was not on it, and that on record twice, so I said—(Defendant objects—Objection sustained).

"Q. Tell what you did. A. I decided she was trying to take the children's property.

"Q. Who was the grantee in that deed when it was recorded the second time? A. The second record showed the deed was to E. M. Howard and wife, Ethel Howard, I believe those were the words."

Appellant denied that she had had her name inserted as a grantee in the deed, and in this she is fully corroborated by the County Court Clerk who testified that Zeke, unaccompanied, came to her office and insisted that his wife's name be added, and that she, the clerk, made the addition.

Another fact relied on by appellee as showing that the property interests of appellant and the children are antagonistic is that in a suit instituted by appellant to enforce the specific performance of a contract to convey five building lots, assigned by the vendees to Zeke Howard, it is alleged that the consideration of $300 was paid by her; that she had erected improvements on the property; and that Zeke's name was inserted in the assignment by mistake, oversight or fraud. In this suit the assignors are joined as plaintiffs and the children joined with the vendors as defendants; the appellant's appointment as guardian of the children is alleged, and the court is specifically requested to appoint a guardian ad litem for the service of process on the two who are under fourteen years of age.

In her testimony appellant disclaimed any interest in the real estate first above mentioned other than her dower. While she does assert title to the building lots involved in the suit referred to, it will be impossible for her to establish her right without proving it by testimony other than her own. Moreover, the Chancellor will appoint a guardian ad litem to defend for all the infants and is fully empowered to protect their interests. Surretta, the oldest child, has exercised her right to choose appellant as her guardian subject to the provisions of KRS 387.050; the County Judge found it de-

sirable that she be appointed for all of them; the testimony conclusively establishes her devotion to their welfare and an entire absence of such devotion on the part of any other person, from which it follows that in the absence of a statute requiring us to do otherwise we should disregard the technical conflict of property interests shown by the record.

The statute, KRS 387.030, confers no absolute right upon anyone to qualify but merely directs the County Judge, unless prudence or the interest of the infants requires otherwise, to give preference, first to the father or mother, or a person named by the survivor, and lastly, to the next of kin. It follows that whenever it appears that the interest of the infant would be better served, it is the right and duty of the court to "go outside the next of kin and appoint a suitable and qualified stranger." Simmons et al. v. Simmons, 185 Ky. 449, 215 S. W. 86, 87. It has also been written by this court: "An examination of the foregoing section and other sections of the Statutes discloses the fact that the Legislature has vested in the county court a very broad discretion in the appointment of guardians. Of the wisdom of this power there can be no question. The county court is on the ground. It knows the people of the community, and in many instances their family history. It comes in contact with the parties. It can judge of their peculiarities and eccentricities, of their fitness or unfitness. The witnesses are brought before it. It can determine the motives and interests that prompt their testimony. Where the action of the county court, therefore, is not arbitrary, or based upon insufficient evidence, but is for that it considers the best interest of the infants, the higher courts should not hesitate to affirm its action." Wright v. Boswell's Guardian, Ky., 103 S. W. 314, 315.

It might be argued that appellee could be appointed guardian of the infants and their custody awarded appellant. See Shelton v. Hensley, 221 Ky. 808, 299 S. W. 979. But since we have decided the issue as to appellant's moral fitness in favor of appellant, and have found no reason for believing that appellee would be more zealous in furthering their financial welfare, we perceive no sufficient reason for dividing the responsibility. Further, it should be noted that appellee is not the infants' next of kin, and hence, has no legal claim to preference.

It is argued by appellee that this is a common-law action, and that since appellant failed to move for a new trial in the Circuit Court, we are without power to consider the testimony there given. This contention is based upon the wording of Section 726, Civil Code of Practice, which provides that appeals in civil actions from judgments of county, quarterly, magistrate, and police courts "shall be docketed and stand for trial as ordinary actions, and shall be tried anew, as if no judgment had been rendered." But we interpret this language to mean no more than that civil cases so appealed shall be docketed and tried in the same manner as they would have been had they been instituted in the courts to which the appeals were prosecuted. No authority to the contrary is cited; and since, from time immemorial all matters relating to the custody of infants and their properties have been under the control of Courts of Chancery, we are unable to conceive that it was the intention of the Legislature that appeals from orders appointing guardians should be tried as common-law actions. Franklin v. Franklin, 299 Ky. 426, 185, S. W. 2d 696; 25 Amer. Juris.—Guardian and Ward—Secs. 23, 24, Page 21. The fact that the action was not transferred to the equity docket is not controlling. In Kramer et al. v. Kramer et al., 288 Ky. 150, 155 S. W. 2d 766, 767, which was an action by wards against their guardian and his surety for an accounting, we said:

"Although this action was brought on the law side of the docket and was never transferred, it is purely an equitable action and the parties so treated it. As it involved complicated accounts, the court should have transferred it to the equity docket on its own motion, Civil Code of Practice, sec. 10, subsec. 4; Finley v. Meadows, 134 Ky. 70, 119 S. W. 216; Brown v. Crescent Stave Co., 207 Ky. 470, 269 S. W. 739. But the court's failure to do so did not affect the rights of the litigants, nor prevent the action from being governed by rules applicable to equity actions, * * *.

"As this was in effect an equity proceeding, it was not necessary for appellant to file a motion for a new trial in order to bring the case here on review and the order overruling the motion for a new trial has no effect upon the right to appeal."

Judgment reversed.