**LOUISVILLE AND JEFFERSON COUNTY PLANNING AND ZONING COMMISSION et al., Appellants,**

**v.**

**G. C. GRADY, Jr. et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 10, 1954.

James L. Taylor, Louisville, for appellants.

R. Davis McAfee, Louisville, for appellees.

CAMMACK, Justice.

This appeal is from a judgment of the Jefferson Circuit Court which directed the Louisville and Jefferson County Planning and Zoning Commission, after a hearing de novo in that court, to approve the appellees' application for a change in the zoning classification of the property in question from B–1 One Family Residence to D–1 Commercial.

G. C. Grady, Jr., is the owner of the lot on the northeast corner of Bardstown Road and Richland Avenue in Buechel. Richland Avenue stops at Bardstown Road, making a T intersection. The lot fronts 168.33 feet on Bardstown Road and 163.67 feet on Richland Avenue and is now occupied by an old two-story frame residence. It is located in an area zoned B–1 One Family Residential. Immediately to the south of the property there is a hardware store, a new building; to the east there is an antique shop and a real estate office; to the north there is a plumbing shop; and a short distance northeastwardly there is a large printing shop. All of the places named constitute non-conforming usage. Across Bardstown Road, southwardly, there is an industrial plant which manufactures and sells grave markers and monuments.

A new subdivision has been created a quarter of a mile south of the Grady property, where a large number of new houses have been constructed, and there are a number of other subdivisions to the south which have recently been approved by the Planning and Zoning Commission. A short distance south and westwardly, the Commission has approved a large industrial area. The General Electric Company's mammoth model factory is now under construction in that area.

There has been filed a proposed plan of the Highway Department to construct a by-pass which will route the southbound traffic around a part of Buechel beginning at the Old Shepherdsville Road and intersecting the existing Bardstown Road approximately at Richland Avenue (where the Grady property is located). The plan shows, however, that southbound traffic will not be permitted to make left turns across traffic at Richland.

A number of the residents of the community around the Grady property do not want to go to the shopping center north of the Southern Railway crossing because of congestion and parking problems. They expressed a desire that a shopping center be developed where they would not have to cross the railroad track twice.

All of Grady's abutting and adjacent property owners testified in circuit court, with the exception of one man, that they believed the change would be beneficial to the neighborhood and to their property. There are only two corners where the property is located. The other corner is used by a plumbing shop, a nonconforming use, which has existed for a number of years.

Grady entered into a contract with the Ohio Oil Company whereby the Oil Company agreed to purchase his property for $27,000.00 and construct thereon an automobile service station. The contract was contingent upon their efforts to obtain a commercial zoning use for the property. On July 3, 1952, Grady and the Oil Company made application to the Zoning Commission for a change in the zoning classification. After a public hearing on August 7, 1952, the Commission adopted a resolution which denied the application. The Commission's chief objection to the change was that it was not in conformity with a comprehensive plan adopted by the Commission on January 3, 1952, which contemplated that all future commercial development in the Buechel area should be north of the Southern Railroad.

Grady and the Oil Company prosecuted an appeal to the circuit court where, after a hearing de novo, it was ordered that the change be made. The Zoning Commission is appealing from that judgment.

It is contended that the lower court erroneously substituted its judgment for that

of the Zoning Commission. The Commission's theory is that the only question properly reviewable by the courts is whether the action of the Commission is unrelated to the public health, safety, morals and general welfare. If the court so found, its action would be arbitrary and unreasonable. On the other hand, it is the appellees' theory that, since KRS 100.057(2) provides for a hearing de novo on appeal to the circuit court from an order of the Zoning Commission, the court is not restricted solely to a consideration of the correctness of the Commission's ruling from the evidence before it, but that the hearing is held and decision reached as if no previous trial or hearing had been held. The lower court adopted this view of the case.

The statute in question, KRS 100.057(2), reads in part:

"After the appeal is taken the procedure shall be the same as in common law actions, and all parties to the proceeding shall have the right to any and all processes, including subpoena, allowed in other cases in said circuit court. * * * Hearings in the circuit court shall be de novo and heard by the judge, and appeals may be taken from the decision of said circuit court to the Court of Appeals of Kentucky in the same manner as common law cases are appealed."

■ Judge Lawrence S. Grauman prepared a very able opinion in the case. He discussed fully the de novo question. Since we concur in the conclusions reached by him on this question, we quote with approval parts of his opinion dealing therewith.

"A hearing de novo means 'trying the dispute anew as if no decision had been previously rendered.'

"In the case of Howard v. Howard, 300 Ky. 60, 187 S.W.2d 276, Section 726 of the Civil Code with reference to appeals to the Circuit Court from inferior courts was interpreted to mean that the appeal should be docketed in the Circuit Court and tried in the same manner as it would have been had it been instituted in the Circuit Court (the Court to which the appeal had been

prosecuted). In Karcher v. Green, 8 Houst., Del., 163, 32 A. 225, it was held that 'a de novo trial' in an appellate court is a trial as if no action whatever had been instituted in the court below.

"In Mason v. World War II Service Compensation Board, Iowa, 51 N.W.2d 432, the term 'de novo' is held to mean a new, a fresh, a second time.

"In Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681, it was held that power to try a case 'de novo' vests the court with full power to determine the issues and rights of all parties involved and to try the case as if the suit had been filed originally in that court.

"In Niehaus v. Madden, 348 Mo. 770, 155 S.W.2d 141, it was held that the Supreme Court tries equity cases 'de novo' by taking the entire record made below and from it forming court's own opinion as to the facts, but in doing so the court will pay due deference to findings of Chancellor and will not ordinarily refuse to follow his findings, unless court deems them clearly contrary to the weight of the evidence.

"In Duncan v. Mack, 59 Ariz. 36, 122 P.2d 215, it was held 'de novo' means literally 'a second time' or 'in the same manner with the same effect'; that on trial de novo in Superior Court on appeal from inferior court or administrative board case will be heard in same manner as if it were an original proceeding in Superior Court, unless statute expressly provides otherwise. * * *".

(We have found a Texas case and an Arkansas case which give restricted interpretations of statutes which provide for a de novo hearing on appeals from the orders of an administrative body. See Davis v. Texas Emp. Ins. Ass'n, Tex.Civ.App., 257 S.W.2d 755, and Chamber of Commerce of City of Hot Springs v. Chicago, Rock Island & Pacific R. Co., 220 Ark. 631, 249 S.W. 2d 8).

"Prior to passage of the 1942 Act, even though no appeal was provided for, a Court of Equity could always enjoin the action of a board or officer where a property right

was involved and the board or officer was acting arbitrarily and unreasonably."
* * *

"If the 1942 Act limited the Circuit Court to hearing the same evidence heard by the Commission, then of course the Circuit Court should not be permitted to substitute its judgment for the judgment of the Zoning Commission. But where the 1942 Act provides for the hearing to be de novo and where the Circuit Court (as was the situation in the within case) hears many witnesses introduced by the landowner who give evidence of probative value to show that the change of zoning should be made, the right of appeal and a hearing de novo would be a nullity if the Circuit Judge was of the opinion that the weight of the evidence favored the appellant, but that as there was some evidence of probative value introduced to sustain the ruling of the Commission, the Circuit Judge could not direct that the zoning be changed." * * *

"If the 1940 (1942) Legislature wanted the Administrative Agency, the Zoning Commission, to be the fact-finding body, and the question to be determined by the Circuit Court to be strictly one of law, then the Act would not have provided for an appeal, and certainly, would not have provided for an appeal de novo. The Act would have provided that the question would have to be determined by the Circuit Court from a consideration of the record in the case as that record had been made before the Commission. If the Legislature would have so provided then the Circuit Court would be limited to determine whether or not there was merely some evidence to support the decision of the Commission and not whether the evidence heard in the Circuit Court preponderates against the decision of the Commission.

■ "I am of the opinion that the test in the Circuit Court is not whether the administrative decision finds reasonable support in substantial evidence, but whether or not the Circuit Court, hearing witnesses anew, acting as a fact-finding body, from a consideration of all the evidence heard in the Circuit Court, is of the opinion that the evidence heard in the Circuit Court preponderates against the decision made by the Commission." * * *

The Commission relies upon the cases of The City of Richlawn v. McMakin, 313 Ky. 265, 230 S.W.2d 902, and Schloemer v. City of Louisville, 298 Ky. 286, 182 S.W.2d 782. However, these cases are not in point because each involved a direct attack upon a zoning ordinance of a municipal corporation. In his opinion, Judge Grauman gave full consideration to the distinguishing features of these cases. In the case of Boyd v. Louisville & Jefferson County Planning & Zoning Commission, 313 Ky. 196, 230 S.W.2d 444, 446, also relied upon by the Commission, a majority of this Court held that the burden of proof was on the Commission to show that its decision was authorized by the police power. It was stated also in the Boyd Case that " * * * The procedure defined [in the statute] is strikingly like that of an appeal from a quarterly court judgment, which is 'tried anew as if no judgment had been rendered' in the same manner as if the case had been instituted in the circuit court."

In the opinion in the recent case of Fried v. Louisville & Jefferson County Planning & Zoning Commission, Ky., 258 S.W.2d 466, there is language which could be interpreted as being in conflict with the views expressed herein on the question of a de novo hearing. Since that question was not decisive in the Fried Case, our attention was not directed to the specific language of the statute. But any language in the Fried Case which is inconsistent with this opinion is hereby overruled.

■ We think the evidence in this case greatly preponderates against the decision made by the Commission, and that the lower court was justified in setting aside that decision after the de novo hearing. His action was not arbitrary or capricious, and did not constitute a mere substitution of his judgment for that of the Commission. The question of whether there should or should not be a de novo hearing in the circuit court in planning and zoning actions ad-

dresses itself to the Legislature and not to the courts.

Judgment affirmed.