**CITY OF LOUISVILLE, Appellant,**

**v.**

**BRYAN S. McCOY, Inc., Appellee.**

Court of Appeals of Kentucky.

Nov. 11, 1955.

As Modified on Denial of Rehearing

Feb. 10, 1956.

Henri L. Mangeot, Herman E. Frick, Louisville, for appellant.

J. W. Jones, Louisville, for appellee.

CULLEN, Commissioner.

In June 1954 the City of Louisville adopted an ordinance rezoning, from "E" Com-

mercial to "B" Two-Family Residential, a small block of land, subdivided into 10 lots, on the outskirts of the city. In an action by Bryan S. McCoy, Inc., the owner of one of the lots, the court held the ordinance void, on the ground that it was arbitrary and unreasonable. The city has appealed.

The block in question is in the form of a trapezium, being bounded on the south by Taylorsville Road, on the west by Cannon's Lane, on the northwest by Janet Avenue, and on the northeast by the city boundary line. Seven of the lots face on Taylorsville Road; one faces Cannon's Lane at its intersection with Janet Avenue; and the other two face on Janet Avenue, which dead-ends at the city boundary line. Approximately 250 feet east of the block, Taylorsville Road intersects with the Watterson Expressway, which is now in the process of being constructed as a new major thoroughfare.

Aside from the question of whether the City of Louisville has any power at all to pass zoning ordinances, which is raised by the appellee and which will be discussed at a later point in this opinion, the parties are agreed that the sole question is whether the 1954 ordinance is arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.

The block in question, together with some adjacent land to the south and west, was annexed by the City of Louisville in June 1950. It came into the city with a commercial zoning classification, having been so zoned by the Louisville and Jefferson County Planning and Zoning Commission (which has jurisdiction outside of cities in Jefferson County) in August 1949. Prior to that time it had been zoned for single family residential use. Around the same time in 1949 the county zoning commission had rezoned, from single family residential to commercial, some adjacent property on the south and on the west. Immediately across the present city boundary line, to the east, there is a tract of vacant land, embracing some 24 acres, which since 1943 has continued to be in a single family residence classification. This tract lies between the block in question and the right of way of the Watterson Expressway. The appellee, Bryan S. McCoy, Inc., owns this tract.

When the block in question was annexed to Louisville, it was unimproved land. In 1951 and 1952, duplex apartment buildings, designed for use as two-family residences, were constructed on nine of the ten lots, and the lots so improved were sold to individual owners, who have occupied and used them as two-family residences. Only the easternmost lot facing on Taylorsville Road has remained unimproved. This lot, triangular in shape, was purchased by Bryan S. McCoy, Inc. on April 27, 1954, which was the day on which the rezoning ordinance here in question was introduced in the Board of Aldermen.

Within the city limits, to the west and northwest of the block in question, the development has been solely residential, with the exception of a gasoline service station at the northwest corner of the intersection of Taylorsville Road and Cannon's Lane. Across Taylorsville Road on the south there is an 11-acre tract which is zoned commercial but which is unimproved except for a gasoline service station at the west end. This station is within the right of way of the Watterson Expressway and will be removed in the construction of the expressway.

Those lots in the rezoned block that face on Taylorsville Road are subject to a plat reservation of a strip reserved for future widening of Taylorsville Road, and of a further strip reserved as an off-the-highway roadway and parking space.

The Watterson Expressway will cross Taylorsville Road on an overpass, connected with which there will be cloverleaf ramps. The ramp for westbound traffic leaving the expressway will run along the south side of the lots in the rezoned block that face on Taylorsville Road. Thus, there will be no direct access from the lots to Taylorsville Road.

In support of the rezoning ordinance, a number of witnesses were introduced.

Their testimony was to the effect that the development in the area in recent years had been almost entirely residential; that the duplex apartment buildings in the rezoned block were not adaptable for commercial use; that the area on the north side of Taylorsville Road was not suitable for commercial use because it was on the going-to-work rather than the going-home side of the road, and because there would be no direct access to Taylorsville Road by reason of the expressway ramp; that the vacant property on the south side of Taylorsville Road would furnish adequate space for commercial development in the neighborhood; that the use of the rezoned block for commercial purposes would create a highway safety hazard; that the value of the area as a whole would be greater with the block in question restricted to residential use; that the one vacant lot in the block has no real value for either residential or commercial purposes; and that deed restrictions on some of the lots in this block prohibit commercial uses. The preamble to the rezoning ordinance recites that the board of aldermen took into consideration a number of the above facts.

In opposition to the ordinance, witnesses were introduced who testified that the ordinance was contrary to good planning; that there was a trend toward commercial development in the general neighborhood; that the most appropriate use of the block in question was for commercial purposes; that there is a neighborhood need to have the block zoned commercial; that the tract south of Taylorsville Road is not suitable for commercial development; that the duplex apartments could be converted into office buildings or store rooms; that the block has greater value if used for commercial purposes; that the owners of the duplex apartments purchased them in reliance upon the fact that the property was zoned commercial; and that the one vacant lot has no value for residential purposes but does have value for commercial use.

It will be observed that the greater portion of the evidence on both sides consisted of opinions as to the most suitable use of the property in question. There is no basis upon which to give the opinions on one side any greater weight than those on the other. There is an almost equal balance of the opinion evidence.

In the field of positive facts, as distinguished from opinions, it is undisputed that the actual development of the block in question has been for residential purposes. Also, the development of the surrounding area on the west and north has been residential, and the tract to the east, in the county, is zoned for residential use. These facts must be given weight in considering whether the rezoning ordinance is arbitrary or unreasonable.

In City of Louisville v. Puritan Apartment Hotel Co., Ky., 264 S.W.2d 888, at page 890, this Court said:

"The law raises a presumption in favor of the validity of the ordinance and the burden is on the person attacking it to show its invalidity. Should reasonable minds differ as to whether the ordinance has a substantial relation to the public health, morals, safety or general welfare, the ordinance must stand as a valid exercise of police power. * * " Citing Schloemer v. City of Louisville, 298 Ky. 286, 182 S.W.2d 782.

Applying the foregoing rule, we think the evidence here falls far short of establishing the invalidity of the ordinance. Under the evidence, reasonable minds could well conclude that the ordinance does have a substantial relation to the public health, morals, safety and general welfare. We think it is appropriate to call attention, at this point, to the fact that a different test of validity of the action of the zoning authorities applies in cases arising under KRS 100.031 to 100.098, where the statutes provide for a trial de novo in the circuit court. See Louisville & Jefferson County Planning & Zoning Commission v. Grady, Ky., 273 S.W.2d 563.

The appellee makes some point of the fact that the property was first zoned residential, then was rezoned commercial in 1949, and then only five years later was

again rezoned residential. He argues that this shows arbitrary action. We think a sufficient answer to this is that the previous zoning was done by another authority, the county zoning commission, and the city was under no obligation to abide by that zoning. We think the city had power to consider, independently of the previous zoning action, the most suitable zoning classification for the property as a part of the city.

It also is argued by the appellee that the rezoning by the city was done merely to assist the county zoning commission in pending litigation involving the zoning of the tract owned by the appellee immediately east of the city limits. The appellee had applied to the county zoning commission for the rezoning of this tract as commercial. The application was denied, and the appellee appealed to the circuit court. The city rezoning ordinance here in question was passed while that appeal was pending.

Assuming that the city did act with the purpose of assisting the county zoning commission, it does not follow that the city's action was arbitrary and unreasonable. We think it may be considered desirable for the city and the county to cooperate and follow a coordinated plan with respect to the zoning of property lying adjacent to the city boundaries. Regardless of this, it is well settled that the courts will not inquire into the motives that impel legislative action. Morrow v. City of Louisville, Ky., 249 S.W.2d 721.

It is our opinion that the court erred in holding the ordinance to be arbitrary and unreasonable.

There remains the question raised by the appellee, as to whether the City of Louisville has any power at all to pass zoning ordinances. The contention that it has no such power is based upon the proposition that the city, having entered into an agreement with Jefferson County, in 1942, to operate under a joint planning and zoning system pursuant to KRS 100.031 to 100.098, can proceed only under those statutes; that the city has not taken the necessary steps to comply with the statutes; and therefore the board of alderman cannot pass zoning ordinances.

It appears that the city did enter into an agreement with the county, pursuant to KRS 100.031, for establishment of a joint city-county planning and zoning system. A city-county planning and zoning commission, and a city-county board of zoning adjustment and appeals, was created pursuant to KRS 100.032, and these boards have continued to function, since 1942, with city and county representation in their membership.

The statutes in question provide for the adoption of a "master plan" by the board of aldermen as it affects the city and by the fiscal court as it affects the county, KRS 100.046 to 100.051. The statutes further provide for similar adoption of a "zoning plan," KRS 100.066. A master plan for the county only was prepared and adopted by the fiscal court, and a zoning plan for the county only likewise was prepared and adopted by the fiscal court. Neither a master plan nor a zoning plan for the city has ever been prepared or submitted to the board of aldermen. Instead, the city has continued to carry on its zoning operations under former ordinances, as from time to time amended and supplemented. Zoning changes have been effected through ordinances. This method of operation has continued for thirteen years.

We think the answer to the question presented may be found in the provisions of KRS 100.035. The first sentence of that statute reads:

"Any and all existing planning and zoning plans, ordinances, resolutions or orders, and regulations and restrictions, or amendments thereof, in effect within the respective territorial jurisdictions of such county and such city shall continue and remain in full force and effect until superseded by new planning and zoning plans, ordinances, resolutions or orders, regulations and restrictions, approved and adopted as herein provided."

We interpret this statute as authorizing the continuance of the existing zoning

system for the city until such time as the new system actually is placed in operation. Whether the city has improperly failed to place the new system in operation is a question not before us; the fact remains that the new system has not been placed in operation and under the statute quoted above the old system therefore remains in effect. It is our opinion that the city had the power to enact the zoning ordinance here in question.

The judgment is reversed, with directions to enter judgment upholding the ordinance.