Ernest E. CLARK et al., Appellants,

v.

CITY OF PADUCAH, Kentucky, et al., Appellees.

Court of Appeals of Kentucky.

March 28, 1969.

---

Adrian H. Terrell, Terrell, Schultzman & Hardy, Joseph J. Grace, Paducah, for appellants.

Roy N. Vance, Paducah, for appellee Urban Renewal and Community Development Agency.

Samuel S. Boaz, Paducah, for appellee City of Paducah.

Dwain H. Lowry, Paducah, for appellee Valley Road Inv. Co., Inc.

CLAY, Commissioner.

This is a suit to have declared invalid as arbitrary and unreasonable a certain restriction in a zoning classification adopted by the City of Paducah. The trial court denied appellants the relief sought.

When this suit was filed in 1965 appellants were the owners of eight lots lying on the north side of the Beltline highway in Paducah. Subsequently all of these lots were condemned by the Urban Renewal Agency but the suits to determine just compensation are still pending. Appellants' ultimate objective is to be able to present evidence in the condemnation suits of the increased value of their lots if the restriction in the zoning classification under attack is removed.

A phase of this controversy was before us in Tharp v. Urban Renewal & Community Develop. Agency, Ky., 389 S.W.2d 453. In that case we held that the property owners (similar to those in this suit) could not introduce evidence that the highest and best use of their properties was "highway commercial" because the area was zoned M–2 Light Industrial and there was no reasonable probability of a zoning change.

In 1961 the city commission of Paducah enacted a comprehensive zoning ordinance. Included in it was a large area north of the Beltline highway zoned M–2 Industrial, with a prohibition against commercial businesses except as accessory uses to an established industrial use. Acting under this zoning classification Urban Renewal developed an industrial park, known as Tyler Park, which encompassed about one-half of the M–2 zoned area. That classification as originally adopted has continued to this day. It is appellants' position that their lots, located in Tyler Park, were ideally suited for *commercial* development and the restriction in the M–2 classification lessened their market value. They contend that this restriction was arbitrary and unreasonable.

Appellees have interposed the defenses: that appellants have no standing to sue since they have conveyed their lots to Urban Renewal; that there is no justiciable controversy; and that appellants were guilty of laches in failing to file this suit at an earlier date. Without determining the sufficiency of these defenses, we are inclined to look at the merits of the principal controversy.

No one questions the right of a court to judicially review the action of a zoning administrative board on the ground that it is arbitrary and unreasonable.[1] Schloemer v. City of Louisville, 298 Ky. 286, 182 S.W.2d 782; Hatch v. Fiscal Court of Fayette County, Ky., 242 S.W.2d 1018; American Beauty Homes Corp. v. Louisville, etc., Ky., 379 S.W.2d 450. There is a

---

1. While the controversy involves a city ordinance, the scope of judicial review is the same since the alleged arbitrary action was that of the zoning commission, and hereafter in the opinion we will treat the action taken by the city and the zoning commission as one and the same.

presumption favoring the validity of a zoning ordinance and the burden is upon the person attacking it to establish its invalidity. Hatch v. Fiscal Court of Fayette County, Ky., 242 S.W.2d 1018; City of Louisville v. Bryan S. McCoy, Inc., Ky., 286 S.W.2d 546.

Appellants take the position that their lots were suitable for commercial development, which is true; that if this use were permissible under the zoning classification it would greatly increase the value of their lots, which we will assume to be true; that property on the south side of the Beltline highway is zoned commercial, which is true; and that therefore the only and unsupportable reason for the restriction in the M–2 classification was to enable Urban Renewal to acquire appellants' lots at a cheaper price, which of course does not follow at all.

The evidence shows that when the comprehensive zoning plan was up for consideration in 1960 and 1961 Urban Renewal was interested in developing an industrial area. The zoning commission employed an eminently qualified and experienced planning consultant to make recommendations, which he did. Relying upon his prior knowledge and a current investigation of industrial development problems in other cities, he was of the opinion that the most favorable climate for industrial development would require prohibition of collateral commercial uses in the same area. His recommendation in this respect, after careful study by the administrative authorities, was adopted. He testified that he presented his plan from the standpoint of proper city planning and that the effect on property values was not a primary consideration. We can find nothing in this record to even suggest that this expert's recommendation was unreasonable or unrelated to proper planning purposes, or that the adoption of this recommendation by the zoning commission was in any sense arbitrary.

■ There is no question that the area in which appellants' lots lie is suitable for

*industrial* development, because when the rezoning was under consideration in 1960 and 1961 appellants themselves requested that the land be zoned for that very purpose. They now say it would be so much better *for them* (from a money-making standpoint) to allow commercial development also. This may be true, but their private interests are not superior to those of the public. Almost invariably some property owners suffer an actual or speculative financial loss as the result of zoning restrictions, but the mere fact that a forbidden use of property would be more profitable is not an unwarranted hardship which would require a finding of arbitrary action. Schloemer v. City of Louisville, 298 Ky. 286, 182 S.W.2d 782.

The foregoing opinion also answers appellants' argument that it is an indicia of arbitrariness for the zoning authorities to place the property on the south side of the Beltline highway in one classification and the property on the north side in another. Obviously a zone line must be *somewhere*. In addition to the considerations above mentioned, traffic problems on the Beltline highway were proper factors which could reasonably justify a limitation on commercial development.

■ It is argued that the circumstances indicate an improper motive on the part of the zoning authorities, but motive is immaterial if the action taken bears an appropriate relation to a proper zoning objective. Tharp v. Urban Renewal & Community Develop. Agency, Ky., 389 S.W.2d 453. We may observe we are unable to find in this record evidence of an improper motive.

■ We return to our point of departure. There is a presumption favoring the validity of a zoning ordinance and the burden is upon those attacking it to prove that it was arbitrary and unreasonable. If there is no more than a doubt about its validity, it must stand as a valid exercise of the police power. Schloemer v. City of Louisville, 298 Ky. 286, 182 S.W.2d 782.

 

Looking at all of the facts and circumstances surrounding the adoption of this zoning ordinance in 1961, like the trial judge we are unable to find any evidence of probative value that the zoning authorities acted capriciously, arbitrarily or unreasonably by imposing the zoning restriction here in controversy.

The judgment is affirmed.

All concur.